## TWINING v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. December 11, 1905.)

### No. 13.

BANKS AND BANKING—NATIONAL BANKS—MAKING FALSE ENTRIES IN BOOKS.
    Entries in the books of a national bank which correctly record actual transactions of the bank, although such transactions may have been unauthorized, or even fraudulent, are not false entries, within the meaning of Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], and will not sustain an indictment thereunder for the making of false entries.

In Error to the District Court of the United States for the District of New Jersey.

Herbert C. Smyth and John G. Johnson, for plaintiff in error.
Edmund Wilson, for the United States.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. The indictment which this writ of error brings before us is under section 5209 of the Revised Statutes [U. S. Comp. St. 1901, p. 3497], and contains six counts, which charge the defendant (the plaintiff in error) with making false entries in the reports and in the books of the First National Bank of Asbury Park, of which the defendant was a director. The first three counts charge that the defendant made false entries in three reports which were made by the bank to the Comptroller of the Currency, dated, respectively, the 15th of July, 1901, the 25th of February, 1902, and the 23d of September, 1902. Each of these reports is made the subject of a separate count; the false entry charged consisting in overstating the amount that was due to the bank from loans and discounts by the sum of $1,000, in that

there was included in the sum so stated to be due the bank a promissory note, dated at Asbury Park the 13th of September, 1899, made by one Benjamin Albertson and indorsed by him in blank, which it is alleged was worthless and void because of the fact that it had been paid and satisfied. The fourth count charges that the defendant made certain false entries on the 23d of January, 1903, in the bank's journal balance book No. 7; the same being an entry showing a credit of $400 to the bills discounted account, and including a credit of $250 to that account by reason of a supposed payment of $250 upon a note made by Alonzo W. Parsons dated February 14, 1902, payable to his own order for $1,000, four months after its date, and another alleged false entry showing a credit to the profit and loss account of $300 on account of the transactions of January 23, 1903, which included a supposed loss on the Parsons note, whereas the credit to the profit and loss account should have been not less than $550, instead of $300, because no loss had been sustained by the bank on account of said promissory note. The fifth count charges that on the 23d of January, 1903, the defendant made a false entry in the bank's journal book No. 7, showing a credit to the profit and loss account of $300 on account of that day's transactions, which included a supposed loss of $950 on account of a note made by John E. Davis for $1,700, dated November 18, 1902, and payable to the order of Davis three months after its date, when, as is alleged, there should have been a credit of not less than $1,250 to the profit and loss account, because no loss had been sustained by the bank on account of said note. The sixth count charges that on the 3d day of March, 1902, the defendant made a false entry in the bank's Journal Balance Book No. 6, showing a charge to the profit and loss account of $700 on account of a promissory note dated March 20, 1896, of Jesse B. Twining, for the sum of $1,700, payable to the order of Hannah B. Twining, when in fact no loss had been sustained by the bank on account of said note.

The jury rendered a general verdict of guilty. Judge Kirkpatrick, before whom the case was tried, died subsequent to the verdict. Thereafter a motion for a new trial was made before Judge Lanning, who after argument set aside the conviction upon the first three counts of the indictment, but refused to disturb the verdict on the last three counts. The defendant was then sentenced on each of the last three counts of the indictment to six years' imprisonment in the state prison; the terms of sentence to be concurrent. After sentence the defendant sued out this writ of error. The primary question we are called on to consider is whether there was evidence to sustain the verdict upon the fourth, fifth, and sixth counts of the indictment, or either of those counts.

Under the proofs it cannot be pretended—indeed, it was not claimed by the government—that the defendant, Twining (the plaintiff in error), personally made any of the alleged false entries complained of in those counts. In fact, those entries were made by J. Edward Davis, who was assistant cashier of the bank. The position of the government was that they were made pursuant to directions of the defendant, Twining. Davis, who was a witness for the government, testified

that about the 1st of January, 1903, Twining came into the bank and handed to him (Davis) the first sheet of the government Exhibit No. 7, and told Davis that he wanted him "to take care of it." Davis states that he looked it over and told Twining that he did not understand it, to which Twining replied that he would fix it up in a certain way and took it away with him. This Exhibit No. 7 came back into Davis' possession the latter part of January, and then consisted of two sheets, on which are written in the handwriting of Twining certain memoranda relating to divers affairs of the bank—a series of items of credits and charges to various accounts. The witness (Davis) was not at all sure that Exhibit No. 7 in its present shape was handed to him by Twining. But, be this as it may, there was no evidence that Twining gave to Davis any verbal directions respecting the items contained in the paper. The evidence shows that for some time prior to the making of the government Exhibit No. 7 George W. Kroehl, the president of the bank and also a director, and Twining, a director, were openly acting for the bank in fixing up its affairs with a view to the proposed reorganization of the bank, and it is clear, we think, that the several matters contained in the government Exhibit No. 7 appertained to a readjustment of the affairs of the bank. Among the items therein contained this Exhibit shows a credit of $950 to be given to the Davis note and a credit of $250 to be given to the Parsons note. Davis testified that in the previous December, Kroehl, the president of the bank, and Twining, the defendant, while they "were fixing up the affairs of the bank," informed him (Davis) that his note was reduced to $750. When the government Exhibit No. 7 came into the hands of Davis, he made no entries in the books of the bank by virtue of anything contained in that paper; but he took the paper to Martin H. Scott, the cashier of the bank, and left it with him. After keeping the paper for several days Scott handed it back to Davis, who then made the entries complained of in the fourth and fifth counts of the indictment. Undoubtedly those entries were made by Davis with the concurrence of Scott, the cashier.

It appears from the government's evidence that the entry of the charge of $700 to the profit and loss account on the Jesse B. Twining note. which is the subject of complaint in the sixth count of the indictment, was made by Davis by authority of Scott, the cashier, who issued to Davis a "charge slip to profit and loss," dated March 3, 1902, which reads thus:

"Charge profit and loss on note J. B. Twining, No. 8,614, $700."

It is shown by testimony on the part of the government that while the government Exhibit No. 7 was still in the hands of Scott, the cashier, and prior to the making of the alleged false entries complained of in the fourth count of the indictment, Scott entered upon the back of the Parsons note a credit of $250, which credit Scott testified he so entered under and by virtue of instructions given to him by George F. Kroehl, the president of the bank.

The Davis note for $1,700 was given for the price of 10 shares of the bank's stock, and the note was secured by the stock, which was

worth when the original note was given $170 a share, or in all $1,700. Prior to the entry complained of in the fifth count of the indictment, Davis executed a new note to the bank's order for $750, which was the actual value of the collateral at that time, and this note for $750 was accepted and discounted by the bank in lieu of the old note for $1,700. The bank held as security for the Jesse B. Twining note for $1,700 10 shares of stock of the bank, which had been pledged as collateral by Mrs. Hannah B. Twining, the indorser of the note. As part of the plan for the reorganization of the bank, it was arranged that Alonzo R. Parsons should become a director, and that he should purchase from the bank these 10 shares of stock in order to qualify him. Accordingly he gave his note to the bank for $1,000 in payment of this stock. His note was then substituted for the Twining note, and the difference between the two notes, namely, $700, was charged to profit and loss. Scott, the cashier, who, as we have seen, authorized Davis to make this charge to the profit and loss account, testified that this was done by virtue of instructions given to him by George F. Kroehl, the president of the bank. Scott, however, also testified that he had been told by the defendant that he (Scott) was to substitute the Parsons note for the Jesse B. Twining note, and that the difference between the notes was to be charged to profit and loss. There was evidence that the bank was under an obligation to protect Mrs. Twining from any loss on the 10 shares of stock by the sale thereof at a price below its market value, which was $170 a share, at the time it was pledged by her to the bank.

Now it seems to us clear, upon the uncontradicted evidence, that the entries complained of in the fourth, fifth, and sixth counts of the indictment were not false entries within the meaning of section 5209 of the Revised Statutes. These entries were in fact true. Each entry resulted from a transaction actually consummated between officers of the bank and a third party. Assuming that the credits or reductions which the officers gave to these third parties were not justifiable, nevertheless the credits or reductions were actually given and allowed, and the entries in question were simply in accordance with the facts. Moreover, while it is true that the board of bank directors did not by formal resolution empower Kroehl, the president, and the defendant to allow the above-mentioned credits or reductions, there is evidence that these officers were openly acting for the bank in effecting its reorganization and readjusting its affairs, and it would seem that what they did in respect to the Parsons, Davis, and Twining notes was within the scope of their apparent authority. But even were this otherwise, the absence of authority to allow the credits or reductions does not and cannot alter the fact that these allowances were made, and hence cannot make entries false which simply conform to and disclose the actual transactions.

In Coffin v. United States, 156 U. S. 432, 463, 15 Sup. Ct. 394, 406, 39 L. Ed. 481, the court held that a correct entry of a misapplication of the bank's funds, although the transaction was fraudulent, was not a false entry under the statute. The court there said:

"Whilst we consider the charges asked were in some respects unsound, yet the exception reserved to the charge actually given by the court was well taken, because therein the question of misapplication and of false entries are interblended in such a way that it is difficult to understand exactly what was intended. We think the language used must have tended to confuse the jury and leave upon their minds the impression that, if the transaction represented by the entry actually occurred, but amounted to a misapplication, then its entry exactly as it occurred constituted 'a false entry'; in other words, that an entry would be false, though it faithfully described an actual occurrence, unless the transaction which it presented involved full and fair value for the bank. The thought thus conveyed implied that the truthful entry of a fraudulent transaction constitutes a false entry within the meaning of the statute. We think it is clear that the making of a false entry is a concrete offense which is not committed when the transaction entered actually took place and is entered exactly as it occurred."

Furthermore, we have great difficulty in discovering in this record sufficient evidence to justify a finding that the defendant, Twining, made or directed to be made the entries which are the subject of the last three counts. But assuming this to have been shown, we are clearly of opinion, for the reasons above stated, that these entries were not false, and we are further of opinion that upon this ground the court should have instructed the jury to acquit the defendant.

Notwithstanding the absence of a request for binding instructions, it becomes our duty, under the authority of Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 41 L. Ed. 289, and Clyatt v. United States, 197 U. S. 207, 221, 222, 25 Sup. Ct. 429, 49 L. Ed. 726, to determine from the record whether there is any evidence to sustain this conviction, and, finding none, to reverse the sentence.

We ought to add that the record discloses serious errors against the defendant, duly excepted to and before us by assignments in the admission of evidence and in the instructions to the jury, which we do not deem it necessary to discuss, in view of our conclusion upon the main question, which conclusion is fatal to the case of the government.

The judgment against the defendant is reversed, and the cause is remanded to the District Court, with instructions to grant a new trial.