**UNITED STATES of America**

v.

**James PAPPAS et al.**

**Appeal of Richard S. MISCHLICH.**

**No. 18959.**

United States Court of Appeals, Third Circuit.

Argued May 20, 1971.

Decided July 29, 1971.

Archibald Kreiger, Paterson, N. J., Orlando & Orlando, Haddonfield, N. J. (Samuel P. Orlando, Haddonfield, N. J., John A. Yacovelle, Jr., Cherry Hill, N. J., on the brief), for defendant-appellant.

Marc L. Dembling, Asst. U. S. Atty. (Hebert J. Stern, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before SEITZ, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Richard Mischlich was tried and convicted in the District Court for the District of New Jersey of making or causing to be made false entries in the accounts receivable ledger of a member bank of the Federal Reserve System in violation of 18 U.S.C.A. § 1005, and was sentenced to pay a fine of $3,500. Mischlich has appealed, asserting six assignments of error.

### I

On June 30, 1967, a federal grand jury indicted Mischlich, vice-president of the Egg Harbor Bank and Trust Company (Bank),[1] and four others on nine separate counts. Count one alleges that Mischlich and the other defendants had *conspired* to transport fraudulent warehouse receipts in violation of 18 U.S.C.A. § 2314,[2] to misapply funds of the Bank with the intent to injure and defraud the Bank in violation of 18 U.S.C.A. § 656,[3] and to make or cause to be made false entries in the books of the Bank with the intent to defraud the Bank and the Federal Deposit Insurance Corporation in violation of 18 U.S.C.A. § 1005.[4] Counts two through

---

[1.] Mischlich later was elected president of the Bank.

[2.] In pertinent part 18 U.S.C.A. § 2314 provides:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made * * * securities * * * knowing the same to have been falsely made * * *;"

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

[3.] 18 U.S.C.A. § 656 provides:

"Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds, or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

[4.] 18 U.S.C.A. § 1005 provides in pertinent part:

"Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank." * * *

* * * * *

"Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud

five alleged four separate acts of transporting fraudulent warehouse receipts in violation of 18 U.S.C.A. § 2314. Count six charged that Mischlich had made fraudulent statements to the Small Business Administration in violation of 18 U.S.C.A. § 1001.[5] Counts seven and eight alleged that Mischlich made or caused to be made false entries in the accounts receivable ledger of the Bank in violation of 18 U.S.C.A. § 1005. And count nine alleged that Mischlich had violated 18 U.S.C.A. § 656 by misapplying the funds of the Bank for the benefit of James, Mary and William Pappas, three of Mischlich's four co-defendants.

On June 17, 1969, the first of Mischlich's two trials began. The three Pappas defendants pleaded guilty and the Government proceeded to present its evidence to the jury regarding Mischlich and his remaining co-defendant, F. Justin Dick, also a vice-president of the Bank.

The "heart" of the Government's case against Mischlich at the first as well as the second trial was presented by Mrs. Mary Pappas, who testified as follows: The Pappas family controlled the Aristone Canning Company (Aristone)[5a] and Mrs. Pappas acted as the Company bookkeeper. The Bank had loaned a substantial amount of money to Aristone and had accepted as collateral warehouse receipts representing approximately $27,000 of canned goods. The warehouse receipts, however, were fraudulent in that the canned goods reflected on the face of the receipts were nonexistent. When an impending warehouse audit threatened to expose the absence of canned goods and the worthlessness of the warehouse receipts, Mischlich and the Pappases decided to disguise the lack of goods by substituting accounts receivable for the warehouse receipts. At Mischlich's urging the Pappases pretended to sell the non-existent canned goods to the University Pizza Company, and prepared false documents indicating that University Pizza owed approximately $27,000 to Aristone for the mythical canned goods. Knowing that the accounts receivable were false and non-existent, Mischlich arranged the substitution of the accounts for the warehouse receipts as collateral for the Bank's outstanding loan to Aristone. Dick was the bank official who actually completed the substitution and directed that the appropriate entries be made in the Bank's books.[5b]

At the close of the Government's case at the first trial, both Dick and Mischlich moved for judgments of acquittal. In response, the trial court dismissed all nine counts of the indictment as to Dick, and as to Mischlich the court dismissed all of the counts except six and seven. Thereafter, Mischlich moved for a mistrial as to counts six and seven on the ground that the jury had heard evidence

such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System."

5. 18 U.S.C.A. § 1001 provides:
 "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, ficti-

tious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

5a. The indictment referred to the company as "Ariston" but the notes of testimony indicate the correct spelling is "Aristone."

5b. There was no evidence other than this routine function to prove that Dick had knowledge of the fraudulent character of the transaction.

on all the charges against Dick, and the seven counts against Mischlich, all of which had by then been dismissed, and that the evidence regarding the dismissed counts would necessarily prejudice the jury against Mischlich. Mischlich strenuously urged that instructions to the jury would be ineffective to cure the prejudice created by the introduction of evidence against him unrelated to counts six and seven, which had survived his motions to dismiss. The District Court at first denied Mischlich's motion for a mistrial as to counts six and seven. However, the next day it decided, after reflecting on the problem, that Mischlich's motion should have been granted and consequently declared a mistrial as to the remaining two counts of the indictment. The district judge stated that his reason for declaring a mistrial, after first having denied the motion, was that he believed the jury would be unable to separate the evidence relevant to counts six and seven from the evidence pertaining to the counts against Dick and the counts against Mischlich, which had been dismissed.

On August 25, 1969, Mischlich's second trial began, and following a lengthy proceeding the jury found him guilty of the offenses charged in counts six and seven. After the jury's verdict, however, the court entered a judgment of acquittal as to count six on the ground that the District of New Jersey constituted improper venue as to this count, D.C., 310 F.Supp. 669. Thus left standing against Mischlich was solely the conviction under count seven.

## II

As his first point on appeal Mischlich contends that his acquittal on count one, the conspiracy count, at the close of the first trial collaterally estopped at the second trial his conviction of the substantive offense charged in count seven. The effect of the prior acquittal upon Mischlich's second trial is a thorny question, raising issues that have con-fused and bedeviled the courts at least since the seventeenth century. Modern decisions have not dispelled the fog created by interrelated and overlapping doctrines grouped together under the rubric of double jeopardy. *See* Note, Twice in Jeopardy, 75 YALE L.J. 262 (1965). Mischlich contends that the prohibitions of three of these related doctrines have been violated in the present case—*collateral estoppel, relitigation of decided facts*, as well as the basic constitutional protection against being twice tried for a single offense.

In an effort to make his way through the thicket Mischlich first refers to Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Hoag v. New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958); Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948); and State v. Cormier, 46 N.J. 494, 218 A.2d 138 (1966). He contends that the holdings of these cases regarding the doctrine of collateral estoppel require us to reverse the conviction under count seven. The general principle enunciated in these decisions is that " * * * when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, *supra*, 397 U.S. at 443, 90 S.Ct. at 1194. In determining whether the Government is bound by a prior criminal judgment, the courts are exhorted to examine the first proceeding to determine whether a jury in the first case might rationally have based its verdict " * * * upon an issue other than that which the defendant seeks to foreclose from consideration [in the second case]." Ashe v. Swenson, *supra*, at 444, 90 S.Ct. at 1194, quoting Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 HARv. L.R. 1, 38–39. Here, there is no need to reconstruct the basis for the acquittal in the first case, as often is the situation when the prior judgment is premised upon a general jury verdict, for the district judge when

he dismissed the conspiracy count specifically stated for the record his reason for so doing:

"In the instant case the defendant was acquitted of the conspiracy count *only* because the Court *failed to find that the conspiracy had as its object* any of the substantive violations therein alleged including that embraced in Count VII. This failure of proof is entirely consistent with the determination in the second trial that the substantive offenses had been proven." (emphasis added) United States v. Mischlich, 310 F.Supp. 669, 673 (D. N.J.1970).

 It is therefore, clear that the dismissal of the conspiracy count was not predicated upon a factual finding by the Court that Mischlich himself had failed to accomplish the acts embodied in the substantive count, rather the court indicated only that there was a fatal variance between the indictment and the proof because the Government had not demonstrated that the alleged conspiracy had as its object the substantive crime alleged in the conspiracy indictment. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) makes clear that the crime of conspiracy is separate and distinct from a related substantive crime. As previously noted, it is a prerequisite for the invocation of the doctrine of collateral estoppel that the first acquittal foreclose the possibility that a rational jury might base its verdict in the second prosecution upon a ground other than that decided by the first acquittal. Here, such possibility was not precluded because there is no inconsistency in finding that Mischlich did not participate in a conspiracy having as its object the making of false entries in the Bank's ledgers and in finding that in fact he did make, or cause to be made, such entries.

Mischlich contends that the present facts are indistinguishable from those in Sealfon v. United States, *supra*, and that therefore his conviction must be re-versed. Sealfon was tried and acquitted of conspiring to defraud the United States by submitting false invoices and making other representations to a federal ration board regarding the sale of sugar—then a rationed commodity—to agencies exempt from sugar quotas. Following the acquittal on the conspiracy charge, Sealfon was tried and convicted of aiding and abetting the submission to the federal ration board of the same false invoices introduced as evidence in the conspiracy trial. The Supreme Court examined the circumstances of both trials and found that the crucial thrust of the Government's evidence at the second trial was the alleged agreement found by the jury in the first trial to be non-existent. Accordingly, the Court held that Sealfon's conviction at the second trial was error, because the basic facts found at the first trial necessarily decided an issue in favor of the defendant fundamental to a proper conviction by the second jury and thus foreclosed a finding that Sealfon was guilty. Here, unlike *Sealfon*, the trial court's granting of the motion for acquittal for the reason specifically stated did not decide an issue of fact in favor of Mischlich necessary to support a verdict of guilty at the second trial.

In making this argument Mischlich has also referred to Marakar v. United States, 370 U.S. 723, 82 S.Ct. 1573, 8 L.Ed.2d 803 (1969) and Petite v. United States, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1962). However, both cases have inapposite holdings and in any event do not suggest any variance from the principles established in *Ashe* and *Sealfon*. In *Petite*, the defendant was indicted in the Eastern District of Pennsylvania for *conspiring* to make false statements to an agency of the United States and also for suborning perjury. Petite pleaded *nolo contendere* to the conspiracy charge and thereafter the Government dismissed the subornation charge. Subsequently, Petite was indicted in the District Court of Maryland for suborning perjury based on the same transaction involved in the Penn-

sylvania indictments. He was convicted in Maryland and eventually petitioned the Supreme Court for a writ of certiorari on the ground that the double jeopardy clause forbade the Maryland prosecution. The Court granted the writ and ultimately vacated the judgment of conviction in a per curiam opinion. However, the basis for the Court's decision was the *Government's* motion for such relief grounded upon the then policy of the United States that several offenses arising from a single transaction must be tried together. Thus, *Petite* does not reach the issues raised here and as the Court stated its decision did not "intimate" an opinion on the double jeopardy question. Similarly, in *Marakar* judgments of conviction were vacated upon the motion of the Solicitor General.

It has also been suggested that this Circuit's doctrine prohibiting "re-litigation of decided facts" is applicable to the present case. This doctrine was first enunciated in United States v. DeAngelo, 138 F.2d 466 (3rd Cir. 1943), and was later applied in United States v. Simon, 225 F.2d 260 (3rd Cir. 1955). In *DeAngelo* the defendant was tried twice—first for a bank robbery when he was acquitted, and later for conspiracy to commit bank robbery. At the conspiracy trial, the Government introduced testimony tending to prove that DeAngelo had committed the overt act of bank robbery, and the jury convicted him of the crime of conspiracy to rob a bank. We held that it was error for the Government to introduce at the conspiracy trial evidence proving DeAngelo had participated in a robbery when a prior jury decided that DeAngelo had not taken part in the robbery:

> " * * * for the government to relitigate in the conspiracy trial the facts as to DeAngelo's alleged presence at and participation in the robbery and the resubmission of those issues allowed the jury in the conspiracy case to find the facts in such regard contrary to the findings as impliedly established by the verdict of

acquittal of the robbery. * * *"
138 F.2d at 469.

See United States v. Simon, *supra,* 225 F.2d at 262.

■ Here, the single fact decided by the judgment of acquittal was that Mischlich had not participated in a conspiracy having as its object the making of false entries in the Bank's ledger. In the second trial the Government did *not,* unlike in *DeAngelo,* introduce evidence of which the only purpose could be to prove a fact already decided by the prior acquittal. Mrs. Pappas's testimony was relevant to, and in fact did, demonstrate that Mischlich himself, as distinguished from participating in a conspiracy, caused false entries to be made. Since the judgment of acquittal in the conspiracy count did not decide whether false entries had been made as a result of Mischlich's conduct, the jury in the second trial might consistently find, notwithstanding the *DeAngelo* doctrine, that false entries were, in fact, made.

### III

Mischlich advances a related argument, contending that the fifth amendment's double jeopardy clause was violated by a second trial after the district judge granted a mistrial which ruling Mischlich characterizes as being *sua sponte.* However, the facts do not support the contention. After the Government had presented its evidence in the first trial, the Court entered a judgment of acquittal as to Dick on all counts, and entered a judgment of acquittal as to seven of the nine counts against Mischlich. Mischlich then moved for a mistrial, asserting that the jury—even after proper instructions—would be unable to segregate the evidence relevant to the remaining two counts from the evidence introduced against Dick and that relating to the counts already dismissed as to Mischlich. At first, the Court denied the motion, but the next day stated that after reflection it decided to abort the trial for reasons urged earlier by Mischlich.

To support his position that the delayed ruling by the Court in declaring a mistrial created a double jeopardy situation, Mischlich refers to United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). *Jorn,* however, is not authority for concluding that the second trial violated the double jeopardy clause. In *Jorn* after the jury had been selected and the trial had commenced, the judge, because he believed the Government's witnesses might incriminate themselves and had not been adequately warned of their rights, declared a mistrial in order that the witnesses might consult with their respective attorneys. *Defense counsel had not requested a mistrial and appeared to be willing to continue with the trial.* In deciding that Jorn might not be retried, Justice Harlan writing for a plurality rejected the Government's assertion that the applicable test to determine if Jorn might be retried turned on an evaluation whether the defendant had "benefitted" from the first mistrial. Instead, Justice Harlan concluded that unless the first mistrial had been declared "in the sole interest of the defendant," 400 U.S. at 483, 91 S. Ct. at 556 the double jeopardy clause forbade retrial of Jorn for the same offense charged at the first trial. Since on the facts presented in *Jorn* it could not correctly be said that the judge discharged the first jury "in the sole interest of the defendant," Justice Harlan concluded that the double jeopardy clause insulated Jorn from a second trial.

■ Here, however, the record compels the conclusion that the trial judge declared a mistrial solely in response to the defendant's request, although a day after the request had been made, and that Mischlich's interest was the exclusive motivation underlying the declaration of a mistrial. Accordingly, a second trial of Mischlich was not barred by the double jeopardy clause. *See* Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); Logan v. United States, 144 U.S. 263, 297–298, 12 S.Ct. 617, 36 L.Ed. 429 (1892); Simmons v. United States, 142 U.S. 148, 153–155, 12 S.Ct. 171, 35 L.Ed. 968 (1891).

## IV

Mischlich also contends that the evidence was insufficient to support his conviction under count seven, and that the District Court should have granted his timely motion for a judgment of acquittal. Count seven charged that Mischlich had made or caused to be made an entry in the Bank's accounts receivable ledger to the effect that the Bank had been assigned accounts receivable of its customer, Aristone Canning Company, when Mischlich knew that such accounts receivable were fictitious. Mischlich's theory in this regard is that Aristone had in fact assigned accounts receivable to the Bank and that the statute does not prohibit the recording of a transaction which actually occurred, even when the Government can prove, as they did here, that Mischlich was aware that the assigned accounts were fictitious and uncollectible.

The evidence demonstrates that Mischlich's action was not the mere recording of a transaction as it occurred, but rather was a sham transaction knowingly entered in the Bank's books to disguise the true nature of the Bank's resources and as such violated 18 U.S.C.A. § 1005. *See* United States v. Darby, 289 U.S. 224, 53 S.Ct. 573, 77 L.Ed. 1137 (1933); United States v. Biggerstaff, 383 F.2d 675, 678 (4th Cir. 1967); *cf.* United States v. Fortney, 399 F.2d 406 (3rd Cir. 1968); *compare* Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624 (1897); Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895); Twining v. United States, 141 F. 41 (3rd Cir. 1905).

It is true that Coffin v. United States, *supra,* and Twining v. United States, *supra,* held that recording transactions which accurately reflect a bank's business did not constitute the crime of making false entries, even when the obliga-

tion underlying the entry was worthless and perhaps represented a misapplication of funds. However, there is a meaningful distinction between *Coffin* and *Twining*, and the present case. Here the Government demonstrated that Mischlich was aware that the Aristone accounts receivable did not exist, since University Pizza was in no way indebted to Aristone. In *Coffin* the Court disapproved a jury instruction which permitted the jury to find the defendant guilty of making false entries when the bank entries faithfully recorded an actual occurrence albeit one that amounted to a misapplication of the bank's funds, 156 U.S. at 463, 15 S.Ct. 394. Likewise, in *Twining* this Circuit held that when bank entries recorded real transactions, even ones which caused the bank to lose funds as a result of decisions made by its officers in bad faith, the crime of making false entries had not been committed. Neither of these two cases reaches so far as to preclude a prosecution for making false entries when, as here, the entries were made with the knowledge that the accounts assigned to the bank were purely imaginary. The Government here demonstrated that when Mischlich caused the entries to be made he was fully aware that Aristone had merely conjured from thin air the underlying accounts receivable.

In addition, Mischlich contends that the evidence was insufficient to support a conviction even under the statutory interpretation set forth above. We have carefully reviewed the notes of testimony, and construing the evidence in the light most favorable to the Government as we must,[6] we find the evidence to have been sufficient.

## V

Prior to the commencement of the second trial, Mischlich made a motion to dismiss count six, which charged that he had made fraudulent statements to the Small Business Administration in violation of 18 U.S.C.A. § 1001. The motion was grounded upon an assertion that the New Jersey District Court lacked venue to hear the case, because Mischlich asserted that the alleged crime occurred in a district other than the District of New Jersey. The Court denied the motion on the basis that Mischlich had waived his right to object to the Government's choice of venue by failing to assert the objection at the first proceeding. However, after the jury convicted Mischlich, the Court reversed itself and decided that the objection to venue had *not* been waived, because "The declaration of a mistrial renders nugatory all trial proceedings with the same result as if there had been no trial at all." United States v. Mischlich, *supra*, 310 F.Supp. at 672. Consequently, the Court entered a judgment of acquittal as to count six since the Government's evidence revealed that New Jersey was the improper venue to try this charge.

■ Mischlich alleged, without pointing to any particular harm, that permitting the jury to hear evidence regarding count six created prejudice and tainted the jury's verdict on count seven. However, the record reveals that the trial judge carefully instructed the jury prior to their deliberations regarding the elements of the crimes charged in counts six and seven and admonished them to "[c]onsider the evidence in the case for only those purposes for which it was admitted. * * *" The evidence presented here was not unduly confusing and the manner in which the jury might have been misled has not been pinpointed. Accordingly, we are unable to say that the instruction to the jury was inadequate to prevent them from reaching a verdict of "guilty" on count seven through an improper consideration of the evidence pertaining to count six. *Cf.* United States v. Lipo-

6. *E. g.* Noto v. United States, 367 U.S. 290, 296–297, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961); United States v. Grasso, 437 F.2d 317, 320 (3d Cir. 1970); United States v. Schwartz, 390 F.2d 1, 2 (3d Cir. 1968).

**1202**

witz, 401 F.2d 591 (3rd Cir.), cert. denied sub nom. Muller v. United States, 395 U.S. 924, 89 S.Ct. 1778, 23 L.Ed.2d 240 (1968); United States v. Pritchard, 417 F.2d 327 (5th Cir. 1969); see Frazier v. Cupp, 394 U.S. 731, 735, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *compare* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

### · VI

 Finally, Mischlich contends that the District Court should have granted a requested mistrial because four of the sixteen jurors had read prejudicial newspaper accounts of the trial. Rule 24(c), Fed.Rules of Criminal Procedure, empowers a district court to impanel as many as six alternate jurors in addition to the regular jury. *See* 2 Wright, Federal Practice and Procedure § 388. In the present case the trial judge decided to empanel four alternate jurors. When the fact that potentially prejudicial news reports had appeared in local newspapers came to its attention the District Court interviewed each juror individually in the absence of the other jurors, according to approved procedure. United States v. Largo, 346 F.2d 253 (7th Cir.), cert. denied, 382 U.S. 904, 86 S.Ct. 240, 15 L.Ed.2d 157 (1965); Rizzo v. United States, 304 F.2d 810 (8th Cir.), cert. denied, Nafie v. United States, 371 U.S. 890, 83 S.Ct. 188, 9 L. Ed.2d 123 (1962). Inquiry made by the District Court revealed that four of the sixteen jurors had read the pertinent newspaper articles. Three of the four asserted that having read the reports would not affect their ability to remain impartial and to return a fair verdict, and the fourth juror expressed doubt as to his ability to disregard the articles. In any event, the trial court dismissed all four jurors. The need to dismiss jurors without prematurely ending a trial is precisely the type of problem to which Rule 24(c) is addressed. American Tobacco Co. v. United States, 147 F.2d 93, 117 (6th Cir. 1944), affirmed 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *see* also United States v. Bentvena, 288

F.2d 442, 446 (2nd Cir. 1961). The court warned the jurors not to discuss the case among themselves or with anyone else, and not to listen to reports of the trial on radio and television. Counsel did not request the Court to admonish the jurors not to read newspaper articles regarding the case. And whatever harm may have occurred as a result of the trial court's neglecting to warn the jury not to read news articles reporting the trial was cured by the dismissal of the jurors.

For the foregoing reasons, the judgment of the District Court will be affirmed.