Margarito Rueda **ALMEDA**, Petitioner,

v.

Paul **BLUBAUM**, Sheriff, Maricopa County, Arizona, Respondent.

Manuel Gallegos **MARTINEZ**, Petitioner,

v.

Paul **BLUBAUM**, etc., Respondent.

Epimenio **LOPEZ**, Petitioner,

v.

Paul **BLUBAUM**, etc., Respondent.

Jesus **CHAVIRA**, Petitioner,

v.

Paul **BLUBAUM**, etc., Respondent.

Nos. Civ. 75–240, Civ. 75–227, Civ. 75–262 and Civ. 75–298.

United States District Court, D. Arizona.

Sept. 16, 1975.

Martin Feldhacker Friedl Ltd., Phoenix, Ariz., for Epimenio Lopez.

E. Reid Southern, Phoenix, Ariz., for Jesus P. Chavira.

John F. Foreman, Phoenix, Ariz., for Manuel Gallegos Martinez.

Derickson & Kemper, Phoenix, Ariz., for Margarito Rueda Almeda.

Moise Berger, Maricopa County Atty., for Paul Blubaum.

## OPINION AND ORDER

MUECKE, District Judge.

The factual background in this case is rather involved and, therefore, the facts

involved herein will be set forth at length so as to allow for the examination of petitioners' legal claims in the context of this unique factual setting. There is no disagreement about the facts of this case. The only disagreement is what legal consequences flow from these facts.

On February 20, 1974, petitioners were arraigned in state trial court in Maricopa County, Arizona, for first degree murder and armed robbery. Petitioners were not brought to trial within sixty (60) days after arraignment as required by 17 A.R.S. Rule 8.2(b) [1], and on July 3, 1974, petitioners moved to dismiss on the grounds that they were not brought to trial within the statutory time limits. On July 10, 1974, the Superior Court judge handling the case issued an order which stated that he would grant the motion to dismiss unless otherwise ordered by a higher court.

On July 11, 1974, the County Attorney initiated an appeal to the Arizona Supreme Court (the State's highest court). This appeal was in the form of a special action, as is the proper procedure in Arizona for a proceeding of this nature.

On July 16, 1974, the Arizona Supreme Court overturned the Superior Court's order of July 10, 1974, and ordered that the matter proceed to trial within fifteen (15) days. This July 16, 1974, order was handed down by the State Supreme Court orally, however, the court indicated that a written opinion would follow.

On July 30, 1974, pursuant to the aforesaid oral order of the Arizona Supreme Court, the case came on for trial, and on July 31, 1974, the court, sitting without a jury, found Petitioners Almeda and Lopez each guilty of second degree murder and armed robbery. On that same day, the court accepted guilty pleas from Petitioners Martinez and Chavira on voluntary manslaughter charges. Petitioners Martinez and Chavira were offered the lesser included offense of voluntary manslaughter in return for their testimony in the case against Almeda and Lopez. On August 7, 1974, all four petitioners were sentenced to serve time at Arizona State Prison.[2]

Then, on December 20, 1974, the Arizona State Supreme Court handed down the written opinion that it had said would follow the oral order of July 16, 1974. This opinion in effect reversed the oral order of July 16, 1974, and this opinion held that the lower court had been correct in dismissing the action against petitioners and remanded the matter to Superior Court for the determination of whether the dismissal would be "with or without prejudice of a new trial." On January 3, 1975, the County Attorney filed a motion for rehearing before the State Supreme Court.

1. Rule 8.2(b) states: *"Defendants in Custody.* Every person held in custody in this state on a criminal charge shall be tried by the court having jurisdiction of the offense within 90 days from the date of his initial appearance before a magistrate on the complaint, indictment, or information, or within 60 days from the date of his arraignment before the trial court, whichever is the lesser."

2. As a result of their pleas to the crime of voluntary manslaughter in Maricopa County Superior Court No. CR 79897, Petitioners Martinez and Chavira received identical sentences of not less than one nor more than ten years. Petitioner Almeda following trial in Maricopa County Superior Court No. CR 79897, and after being found guilty of second degree murder was sentenced to not less

than twenty-five (25) years nor more than life, which Petitioner Lopez, after being found guilty in that same trial was sentenced to not less than fifteen (15) years nor more than life.

All petitioners in this case were taken into custody on February 5, 1974, and have been incarcerated continually since that time. Some of time in custody has been spent in the Maricopa County Jail and some has been spent in the Arizona State Prison. Therefore, petitioners have been in custody for over a year and a half.

The petitioners are eligible for parole on the following dates: Margarito Rueda Almeda, June 5, 1982; Manuel Gallegos Martinez, November 10, 1974; Jesus Pinon Chavira, November 10, 1974; Epimenio Coronado Lopez, February 5, 1979.

This motion was directed at the dismissal of the charges against petitioners, and strongly urged the State Supreme Court not to dismiss the charges against petitioners. On January 13, 1975, petitioners filed their pleading in opposition to the County Attorney's motion for rehearing. On January 22, 1975, the Supreme Court of the State of Arizona denied the County Attorney's motion for rehearing, and the court's order issued as of the date of the denial of the motion for rehearing. On January 31, 1975, the Superior Court, pursuant to the order of the Arizona State Supreme Court, dismissed the cases and set aside the convictions without prejudice. On that same day, the County Attorney refiled criminal complaints charging all petitioners with first degree murder and armed robbery. On February 6, 1975, Petitioner Martinez petitioned for writ of habeas corpus raising the double jeopardy issue, and on February 11, 1975, the Superior Court ordered that the County Attorney amend the complaint to charge Martinez with no more than voluntary manslaughter. On February 13, 1975, the County Attorney petitioned the Supreme Court of the State of Arizona by special action requesting that the Superior Court's order to amend the complaint be annulled, reviewed, or set aside.

On February 25, 1975, the Arizona Supreme Court declined to accept jurisdiction of the February 13, 1975, petition for special action, thereby leaving the Superior Court free to rule on Martinez's double jeopardy claims. On February 24, 1975, petitioners were arraigned in Superior Court on the refiled charges of first degree murder and armed robbery.

On March 21, 1975, the Superior Court issued an order dismissing all charges against petitioners with prejudice on the basis of a hearing held on March 20, 1975. At the March 20, 1975 hearing, the court heard motions to dismiss and petitions for habeas corpus which dealt largely with the double jeopardy issues involved in light of the refiled charges.

On March 28, 1975, the County Attorney petitioned the Arizona Supreme Court, by way of special action, claiming that the Superior Court erroneously dismissed the refiled charges. On April 8, 1975, the Arizona Supreme Court ordered that the Superior Court's order dismissing the refiled charges be set aside. The Supreme Court further ordered that Almeda and Lopez could be tried again for second degree murder and armed robbery, and that Martinez and Chavira could be tried again for voluntary manslaughter. On April 10, 1975, the Superior Court ordered that the County Attorney file an amended information charging petitioners with crimes in accordance with the Supreme Court's order, and on April 17, 1975, the County Attorney filed such an amended complaint.

On April 15, 1975, petitioners filed a petition of habeas corpus in this Court, and state court proceedings are presently stayed pending this Court's determination of whether petitioners are being placed twice in jeopardy in violation of the United States Constitution. A hearing was held in this Court on July 18, 1975, on the issues raised by the pleadings in this case, and this Court took the matter under advisement while state court proceedings were, and are now, stayed pending further order of this Court.

Thus, the primary issue is brought into focus by the foregoing facts, i. e., can petitioners be reprosecuted on the same charges for which they are presently incarcerated? Petitioners rely upon the principle of former jeopardy and plead this principle as a bar to another prosecution on the same charges that were originally brought by the State.

■ This Court must find that petitioners cannot be reprosecuted for those same charges. The action by the Arizona Supreme Court in issuing their second written opinion of December 20,

1974, setting aside the convictions of petitioners, was unsolicited. All parties to the action relied on the earlier oral decision of July 16, 1974, of the Arizona Supreme Court as being the expression of the course to be taken by that Court. The Court was put on notice by the County Attorney's January 3, 1975, motion for rehearing that stated if the Court remained adamant in dismissing the charges against petitioners, it should be prepared to face the fact that the double jeopardy prohibition against retrial was a serious constitutional problem that would have to be faced. In spite of this the Arizona Supreme Court, with no request being made by petitioner, vacated the convictions for which petitioners are presently incarcerated. Therefore, this Court is constitutionally compelled to find, as did the Maricopa County Superior Court in its March 21, 1975, order, that petitioners cannot be reprosecuted on the same charges for which they were originally prosecuted.

The Court in *United States v. Pappas*, 445 F.2d 1194 at 1197 (3rd Cir. 1971), stated in referring to some of the problems involved in double jeopardy claims that issues were raised which "have confused and bedeviled the courts at least since the seventeenth century." The Court went on to acknowledge:

> "Modern decisions have not dispelled the fog created by interrelated and overlapping doctrines grouped together under the rubric of double jeopardy." *supra.*

While realizing that there is no well defined course in this area of the law, this Court is of the opinion that the issues presented in this case can be resolved by the use of some traditional principles which have evolved under the double jeopardy doctrine.

It is undisputed that the constitutional protection against double jeopardy is now applicable to state criminal defendants. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The court in *United States v. Coke*, 404 F.2d 836, at 839 (2nd Cir. 1968), quoting from *Patton v. North Carolina*, 381 F.2d 636, 643–644 (4th Cir. 1967), *cert. denied*, 390 U.S. 905, 8 S.Ct. 818, 19 L.Ed.2d 871 (1968), held that the double jeopardy clause embraces three separate rules:

> "prohibiting (1) reprosecution for the same offense following acquittal, (2) reprosecution for the same offense following conviction, and (3) multiple punishment for the same offense."

It is well settled that "a defendant who appeals and is found entitled to a new trial has waived his right to claim double jeopardy at the second trial. (citations omitted)." *United States v. Stapleton*, 494 F.2d 1269, at 1270 (9th Cir. 1974). The *Stapleton* court quoting from the case of *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), reasoned:

> "(T)he conviction and sentence upon the former trials were reversed upon writs of error sued out by the plaintiff in error. The only thing the appellate court could do was to award a new trial on finding error in the proceeding, *thus the plaintiff in error himself invoked the action of the court which resulted in a further trial. In such cases he is not placed in second jeopardy within the meaning of the Constitution.*" (emphasis added).

Therefore, it seems that the prevailing rationale is that in a case where an appellant or petitioner seeks another trial while claiming error in the first trial, the appellant or petitioner waives his right to be free from "embarrassment, expense and ordeal," and from being forced to "live in a continuing state of anxiety and insecurity." *See Green v. United States*, 355 U.S. 184, at 187–188, 78 S.Ct. 221, at 223, 2 L.Ed.2d 199 (1957).

Thus, we come to face the crucial issue in this case, i. e., did petitioners "invoke the action of the court which resulted in a further trial" thereby waiving any constitutional claims to prevent further trial?

The Arizona Supreme Court, on December 20, 1974, upon handing down the written opinion that the Court had indicated would follow the oral order of July 16, 1974, reversed itself and ruled that petitioners had been correct, and should have prevailed in their pretrial motion to dismiss the charges based upon pretrial delay, and that petitioners should not have been brought to trial in the first instance. The State argues that the Court was merely reacting to the pretrial motion to dismiss, and that petitioners, since they initiated that motion which invoked the machinery of the court system waived any double jeopardy claims that they might have had. To support its contention in this particular factual setting, the State cites *United States v. Pappas*, et al., 445 F.2d 1194 (3rd Cir. 1971), for the proposition that the belated granting of a motion for mistrial is nonetheless done at the instance of the originator of the motion. In that case the court held:

> "Here, however, the record compels the conclusion that the trial judge declared a mistrial solely in response to the defendant's request although a day after the request had been made, and that (appellant's) interest was the exclusive motivation underlying the declaration of a mistrial." *Pappas, supra,* at 1200.

The day's time lapse between the motion and the ruling in *Pappas* reflect no changed circumstances which would warrant any conclusion that the defendant had been prejudiced. In this case, a trial was conducted and guilty pleas were accepted, and all of the petitioners were incarcerated in the Arizona State Prison in reliance on the oral order of the Arizona Supreme Court of July 16, 1974. Moreover, the Court of Appeals in *Pappas* found that the defendant's interest "was the exclusive motivation underlying the declaration of a mistrial."

In the case at bar, the situation is substantially dissimilar. The court decided after more than five (5) months subsequent to petitioners' motion that they should not have been brought to trial. At the time of the Arizona Supreme Court's reconsideration by written order of December 20, 1975, the petitioners had already been tried and convicted or had plead guilty and were incarcerated and serving time on prison sentences which had been imposed as a result of a trial with two petitioners, and guilty pleas with the two other petitioners.

In this Court's research, the only cases which it has found where a second trial was held not to be violative of double jeopardy because the first trial was declared a mistrial independent from any motion or urging by the defendant, were cases where the defendant had not been subjected to a full trial and subsequent incarceration as is the case here.

In *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the Supreme Court held, where a trial judge declared a mistrial to enable the government's witnesses to consult with their attorneys to be advised of their constitutional rights, and where the prosecutor had informed the trial court that the witnesses had been advised of their rights, and "(t)he judge, expressing the view that any warnings that might have been given were probably inadequate, proceeded to discharge the jury", that this was violative of the defendant's right not to be subjected to double jeopardy. The Court in *Jorn* at 479–480, 91 S.Ct. at 554, stated:

> "But it is also true that a criminal trial is, even in the best of circumstances, a complicated affair to manage. The proceedings are dependent in the first instance on the most elementary sort of considerations, e.g., the health of the various witnesses, parties, attorneys, jurors, etc., all of whom must be prepared to arrive at the courthouse at set times. And when one adds the scheduling problems arising from case overloads, and the Sixth Amendment's requirement that the single trial to which the double jeopardy provision restricts the

Government be conducted speedily, it becomes readily apparent that a mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide. As the Court noted in *Wade v. Hunter,* supra, at 689, 69 S.Ct., at 837 'a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.' "

The *Jorn* court at 400 U.S. 481, 91 S. Ct. 555, quoting from *United States v. Perez,* 9 Wheat. 579, 6 L.Ed 165 (1824) where the issue was the problem of reprosecution after a mistrial had been declared without the consent of the defendant, stated:

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes."

The *Jorn* court, at 400, U.S. 482, 91 S.Ct. 555, went on to hold:

"But a more recent case—*Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961)—while adhering in the main to the *Perez* theme of a 'manifest necessity' standard of appellate review—does suggest the possibility of a variation on that theme according to a determination by the appellate court as to which party to the case was the beneficiary of the mistrial ruling."

In those cases where a mistrial was declared prior to the termination of the first trial and where courts have held that a new trial would not be in violation of the double jeopardy clause, the courts relied on the theory that the mistrial was declared in the sole interest of the defendant, *see United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970), and *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); or alternatively, the courts relied on the theory that "manifest necessity" under all of the circumstances justified a retrial. *See Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892), and *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824).

It appears that these theories evolved to insure that a defendant was not deprived of an opportunity to have a proceeding decided in his favor because of an arbitrary decision that the trial was not going along well, thereby permitting the retrial of the defendant with an eye to a more successful prosecution. Therefore, in a situation where a defendant's case has gone to trial and has been resolved against him, these theories do not come in play. As the court held in *United States v. Jorn,* 400 U.S. at 484, 91 S.Ct. at 557:

"For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribu-

nal.' See *Wade v. Hunter,* 336 U.S., at 689, 69 S.Ct., at 837.''

Therefore, since the petitioners have had an opportunity to secure an acquittal the theories which are applicable in a mistrial setting have no relevance here. However, even though this Court holds that the above mentioned theories where retrial is justified if required by "manifest necessity" or where done in the "sole interest of the defendant", do not apply in the instant case, i.e., after incarceration and where a second trial is threatened, it appears that even these theories would fall short of the mark as a justification for a new trial. It can hardly be claimed that the Supreme Court of Arizona was manifestly necessitated to void the first trial and subject petitioners to a second trial. The State's rule [17 A.R.S. Rule 8.2(b)] under which the Arizona court required that petitioners' convictions be set aside required that petitioners be brought to trial within certain time limits. (see fn. 1). The state court apparently is not of the opinion that Rule 8.2(b) reaches constitutional dimension, i.e., conferring petitioners the constitutional right to a speedy trial.[3] This Court would look to Rule 48(b) of the Federal Rules of Criminal Procedure as an analogous provision to Arizona's Rule 8.2(b). Rule 48(b) states:

"If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, *or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.*" (emphasis added).

In *United States v. Clay,* 481 F.2d 133, at 135 (7th Cir. 1973), *cert. denied,* 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247, the court in interpreting a Rule 48 dismissal held:

"Although the trial judge may have intended to dismiss the indictment with prejudice, such a result would have been unwarranted. The order of dismissal did not adjudicate the merits of the government's charge. Nor did it rest on a finding that the defendant's constitutional right to a speedy trial had been denied. . . .

It is, of course, well settled that a Rule 48 dismissal may rest on a nonconstitutional ground, such as 'want of prosecution', and normally such a dismissal is without prejudice to a subsequent prosecution. We believe a dismissal for the purpose of 'calendar control' is in the same category. We therefore construe the district court's order as a dismissal without prejudice."

■ Therefore, a dismissal under Rule 48(b) of the Federal Rules of Criminal Procedure may be for calendar control or perhaps to place the burden upon the prosecution to refile the charges and move the case along. It is puzzling to this Court, however, how the December 20, 1974, order of the Arizona Supreme Court had anything to do with facilitating the prosecution of the case or of regulating the trial court's calendar in light of the fact that petitioners were already convicted and incarcerated and completely off the trial court's calendar. Thus, there was no "manifest necessity" under the circumstances which would have justified retrial of petitioners.

As this Court indicated earlier in this opinion, the rationale of the rules of "manifest necessity" and "sole interest of defendant" as justifications for new trials do not extend past the trial stage where the trial is completed and the de-

---

**3.** When it has been held that the constitutional right to a speedy trial under the Sixth Amendment has been violated, the courts have held that the charges must be dropped since a refiling of the charges would not work toward curing the prejudice which has inured to the defendant because of a tardy prosecutorial effort. *Mann v. United States,* 113 U.S.App.D.C. 27, 304 F.2d 394 (1962), *cert. denied,* 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127.

fendants are incarcerated; however, the Court feels that even were these rationale extended past the trial stage in this case, they would not warrant subjecting defendants to a new trial. It cannot be claimed in good faith that the December 20, 1974, order of the Arizona Supreme Court was made in the "sole interest" of defendants. If this were so, any subsequent *sua sponte* judicial determination that a new trial was appropriate would evade the obvious purpose of the Double Jeopardy clause.

Therefore, we must examine this case under the test of whether defendants invoked the judicial machinery which resulted in the decision voiding their first conviction. This Court must find that they did not. A pretrial motion to dismiss the charges filed against a defendant, once denied, does not remain in a state of limbo, subject to reconsideration and reversal at some unspecified time in the future. In this case, petitioners have been through one trial and are constitutionally protected against being subjected to a second.

The State recognized the double jeopardy problems inherent in the action of the Arizona Supreme Court in voiding the initial charges against petitioners in the State's motion for rehearing on January 3, 1975. On page 19 of that motion, the County Attorney stated:

"This Court must be concerned with the fact that defendants Almeda and Lopez were found *guilty* in a trial to the court because *Jeopardy* has attached regarding those defendants.

Assuming argendo (sic) that the trial court dismisses the case with leave to refile, and assuming further that the State retries all four Defendants and gets convictions on four counts, MURDER, FIRST DEGREE, (felony murder), and Armed Robbery, is this Court prepared to sustain the validity of those convictions when the *double jeopardy* issues are presented on appeal?"

■ Thus, double jeopardy considerations bar a second trial of petitioners. While realizing that petitioners Martinez and Chavira entered guilty pleas to the lesser included offense of voluntary manslaughter in return for their testimony against petitioners Almeda and Lopez, and were not subjected to trial in the first instance, the canopy of double jeopardy and due process covers these petitioners and precludes their retrial also. The same double jeopardy considerations apply where a defendant is incarcerated as a result of a guilty plea as where a defendant is incarcerated as a result of a jury trial and conviction. See *Ward v. Page*, 424 F.2d 491 (10th Cir. 1970), where the court recognized that the defendant/appellant in that case had effected an appeal and thereby subjected himself to retrial by his own voluntary action.

■ It should be noted in the cases of Petitioners Martinez and Chavira that they were eligible to apply for parole on November 10, 1974. (See fn. 2). To now subject these two petitioners to a trial when they have once been cycled through the criminal justice process, especially considering the fact that they have a present right to apply for parole, would be so flagrant a violation of due process that even apart from double jeopardy considerations, their retrial would be constitutionally impermissible.

Therefore, this Court concludes that petitioners did not waive their right not to twice be placed in jeopardy and that they cannot be subjected to trial on the same charges discussed herein. The State's dismissal of the charges against petitioners must be with prejudice.

Thus, IT IS THE ORDER of this Court that the respondent has forty-five (45) days within which to seek a stay of this Court's order from the Ninth Circuit Court of Appeals. If such a stay is not granted by that court within forty-five (45) days from the date of the issuance of this order, the petitioners shall be released from custody.