SEALFON *v.* UNITED STATES.

No. 174.   Argued December 11, 1947.—Decided January 5, 1948.

*John J. Wilson* argued the cause for petitioner.   With him on the brief was *Roger Robb.*

*W. Marvin Smith* argued the cause for the United States.   With him on the brief were *Solicitor General Perlman, Assistant Attorney General Quinn, Robert S. Erdahl* and *Beatrice Rosenberg.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case presents the question whether an acquittal of conspiracy to defraud the United States precludes a subsequent prosecution for commission of the substantive offense, on the particular facts here involved.

Two indictments were returned against petitioner and others. One charged a conspiracy to defraud the United States of its governmental function of conserving and rationing sugar by presenting false invoices and making false representations to a ration board to the effect that certain sales of sugar products were made to exempt agencies.[1] The other indictment charged petitioner and Greenberg with the commission of the substantive offense,[2] *viz.*, uttering and publishing as true the false invoices. The conspiracy indictment was tried first and the following facts were shown:

Defendant Greenberg manufactured syrup and approached Sanford Doctors, a salesman for a brokerage concern, to sell vanilla syrup. Doctors negotiated some sales to petitioner who did a wholesale business under the name of Sero Syrup Co. Thereafter Greenberg asked Doctors to get a list from petitioner showing the places where petitioner made sales and told him that if any sales were made to exempt agencies, Greenberg could sell to petitioner in larger quantities. Doctors so informed petitioner and some time thereafter petitioner wrote to Greenberg saying, "at the present time some of our syrups are being sold at the Brooklyn Navy Yard" and various defense plants. Petitioner did sell some of his syrup to a vending company which had machines at the Navy Yard but it was not vanilla syrup and no sales were made to

---

[1] See § 28 Criminal Code, 18 U. S. C. § 72.

[2] See § 332 Criminal Code, 18 U. S. C. § 550.

the Navy Yard as such. Greenberg thereafter presented a series of false invoices to the ration board purporting to show sales to petitioner for delivery to the Navy Yard. Petitioner's letter was never shown to the board. On the basis of these invoices Greenberg received replacement certificates for 21 million pounds of sugar, 10 million of which he sold to petitioner in the form of vanilla syrup, and which was by petitioner sold to non-exempt consumers, mostly the National Biscuit Company. Petitioner at first made payments to Greenberg by check but thereafter gave checks to his trucker which the latter cashed, deducted his trucking fee, and paid Greenberg.

The jury returned a verdict of not guilty as to petitioner.[3] Thereafter a trial was had on the other indictment which charged petitioner and Greenberg with uttering and publishing as true the false invoices introduced in the conspiracy trial. Greenberg pleaded guilty and the trial proceeded against petitioner on the theory that he aided and abetted Greenberg in the commission of the substantive offense. The false invoices, the letter from petitioner to Greenberg, and essentially the same testimony were again introduced against petitioner. In addition, it was brought out on cross-examination that petitioner had unsuccessfully sought replacement certificates from his ration board for sugar contained in syrups sold at the Navy Yard and defense plants. Greenberg

[3] The conspiracy indictment also named Leo and Murray Greenberg, Fresh Grown Preserves Corporation in which the Greenbergs were officers (all of whom we refer to simply as Greenberg), the S. J. Baron Corporation, the Royal Crown Bottling Co. of Baltimore, Inc., Royal Crown Bottling Co. of Washington, Inc., and William C. Franklin, president of the Royal Crown companies. Greenberg pleaded guilty, Baron Corporation pleaded *nolo contendere,* and verdicts were directed for Royal Crown and Franklin. It was charged that the Baron Corporation participated in the conspiracy by writing a letter similar to that written by petitioner, discussed hereafter.

gave testimony from which the jury could conclude that petitioner was a moving factor in the scheme to defraud which was constructed around petitioner's letter and that he was familiar with Greenberg's intention to submit false invoices. Greenberg further testified that petitioner received $500,000 in cash under the agreement as a rebate of two cents a pound on all replacement sugar which Greenberg received on Navy Yard invoices whether or not it was used in syrup sold to petitioner. This time the jury returned a verdict of guilty and petitioner was sentenced to five years' imprisonment and fined $12,000.

Petitioner moved to quash the second indictment on grounds of double jeopardy (abandoned in this Court) and *res judicata,* and also objected to the introduction of the evidence adduced at the first trial. The district judge ruled against petitioner, and the court below affirmed. 161 F. 2d 481. We granted the petition for a writ of certiorari because of the importance of the question to the administration of the criminal law.

It has long been recognized that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. *Pinkerton* v. *United States,* 328 U. S. 640, 643. Thus, with some exceptions, one may be prosecuted for both crimes. *Ibid.* But *res judicata* may be a defense in a second prosecution. That doctrine applies to criminal as well as civil proceedings (*United States* v. *Oppenheimer,* 242 U. S. 85, 87; *United States* v. *De Angelo,* 138 F. 2d 466, 468: 147 A. L. R. 991; see *Frank* v. *Mangum,* 237 U. S. 309, 334) and operates to conclude those matters in issue which the verdict determined though the offenses be different. See *United States* v. *Adams,* 281 U. S. 202, 205.

Thus the only question in this case is whether the jury's verdict in the conspiracy trial was a determination favorable to petitioner of the facts essential to conviction of

the substantive offense. This depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial.

Respondent argues that the basis of the jury's verdict cannot be known with certainty, that the conspiracy trial was predicated on the theory that petitioner was a party to an over-all conspiracy ultimately involving petitioner, Greenberg, and the Baron Corporation.[4] Thus it is said that the verdict established with certainty only that petitioner was not a member of such conspiracy, and that therefore the prosecution was not foreclosed from showing in the second trial that petitioner wrote the letter pursuant to an agreement with Greenberg to defraud the United States. The theory is that under the instructions given the jury might have found that petitioner conspired with Greenberg and yet refused to infer that he was a party to the over-all conspiracy.

The instructions under which the verdict was rendered, however, must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. We look to them only for such light as they shed on the issues determined by the verdict. Cf. *De Sollar* v. *Hanscome*, 158 U. S. 216, 222. Petitioner was the only one on trial under the conspiracy indictment. There was no evidence to connect him directly with anyone other than Greenberg. Only if an agreement with at least Greenberg was inferred by the jury could petitioner be convicted. And in the only instruction keyed to the particular facts of the case the jury was told that petitioner must be acquitted if there was reasonable doubt that he conspired with Greenberg. Nowhere was the jury told that to return a verdict of guilty it must be found that petitioner was a party to a conspiracy involving not only

_____
[4] See note 3, *supra*.

Greenberg but the Baron Corporation as well.[5] Viewed in this setting, the verdict is a determination that petitioner, who concededly wrote and sent the letter, did not do so pursuant to an agreement with Greenberg to defraud.

So interpreted, the earlier verdict precludes a later conviction of the substantive offense. The basic facts in each trial were identical. As we read the records of the two trials, petitioner could be convicted of either offense only on proof that he wrote the letter pursuant to an agreement with Greenberg. Under the evidence introduced, petitioner could have aided and abetted Greenberg in no other way. Indeed, respondent does not urge that he could. Thus the core of the prosecutor's case was in each case the same: the letter, and the circumstances surrounding it and to be inferred from it, and the false invoices. There was, of course, additional evidence on the second trial adding detail to the circumstances leading up to the alleged agreement, petitioner's participation therein, and what he may have got out of it. But at most this evidence only made it more likely that petitioner had entered into the corrupt agreement. It was a second attempt to prove the agreement which at each trial was crucial to the prosecution's case and which was necessarily adjudicated in the former trial to be non-existent. That the prosecution may not do.

*Reversed.*

---

[5] That was the view of the judge who tried both cases. At the second trial he characterized as follows the charge and the verdict at the first: ". . . what was tried on the 11th of December was a charge of conspiracy and what the jury by its verdict determined was that Sealfon had not entered into common agreement with the Greenbergs and the Fresh Grown Company to violate the law."