Theodore O. TRAVERS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17828.

United States Court of Appeals
District of Columbia Circuit.

Argued April 2, 1964.

Decided June 11, 1964.

WILBUR K. MILLER, Circuit Judge.

On February 4, 1963, a grand jury indicted the appellant, Theodore O. Travers, in two counts. The first charged him with the unauthorized use in the District of Columbia of a 1957 Ford automobile belonging to Joseph Spell "commencing on or about September 16, 1962 and continuing to on or about November 16, 1962," a violation of § 22–2204, D.C. CODE (1961), which is as follows:

"Any person who, without the consent of the owner, shall take, use, operate, or remove, or cause to be taken, used, operated, or removed from a garage, stable, or other building, or from any place or locality on a public or private highway, park, parkway, street, lot, field, inclosure, or space, an automobile or motor vehicle, and operate or drive or cause the same to be operated or driven for his own profit, use, or purpose shall be punished by a fine not exceeding one thousand dollars or imprisonment not exceeding five years, or both such fine and imprisonment."

The second count accused him of transporting the Spell car from the District of Columbia to Maryland on or about November 16, 1962, well knowing it had theretofore been stolen, a violation of 18 U.S.C. § 2312 (1958), which reads:

"Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Thus, the indictment not only accused Travers of the non-federal offense of stealing the Spell car in the District of Columbia, but also of the federal offense of knowingly transporting a stolen car from the District into Maryland. The significance of these two elements will appear later in this opinion.

We summarize the evidence introduced at the trial in March, 1963. Some time in September, 1962, appellant purchased a junked 1957 Ford automobile from a

Mr. Frederick S. Hird, Jr., Washington, D. C., with whom Mr. Carlyle C. Ring, Jr., Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Alan Kay, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee. Mr. Robert D. Devlin, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, BURGER and WRIGHT, Circuit Judges.

salvage yard in Virginia. In the same month he bought another junked 1957 Ford automobile from a salvage yard in Maryland. On September 5, 1962, he submitted the title of his Maryland car to the District of Columbia Division of Motor Vehicles and obtained a District of Columbia title registration and tags.

On the morning of September 16, 1962, Joseph Spell discovered that his 1957 Ford automobile, which had been parked overnight on a District of Columbia street, had been stolen. No trace of it was discovered until November 16, 1962, when a police officer found appellant in Maryland behind the wheel of a 1957 Ford automobile which had collided with a tree. His head was slumped forward and he was bleeding from a gunshot wound in his back. The car bore the District of Columbia license tags which had been issued to appellant for his Maryland junk purchase, and the public serial number of his Virginia junk purchase, but the confidential serial number was that of the car that was stolen from Joseph Spell.[1]

There was no testimony that Travers stole the car from its parking place on or about September 16, 1962, and used it in the District of Columbia during the ensuing two months, nor did any witness testify that Travers transported it from the District into Maryland on or about November 16. Hence there was no direct evidence of Travers's guilt under either count.

A defense witness, Leon Ransome, gave an explanation of the unconscious appellant's presence in the stolen car. He testified that on November 16, 1962, he met Travers at a beer tavern in Maryland. According to Ransome, Chester Williams, a friend of appellant, drove up in a 1957 Ford automobile and, at Travers's request, agreed to take them to Ransome's house; Williams was driving, Travers was in the middle of the front seat, and Ransome was on his

right.[2] Ransome also testified that as they proceeded, they chanced upon two girls and started "fooling" with them. The girls ran into a house and immediately came out with a man carrying a gun who fired through the rear window of the automobile, striking appellant in the back. After the shot, Williams and Ransome abandoned the car, leaving the wounded Travers to fend for himself. A preacher and his son testified that Travers was at their home in Virginia, 145 miles from the District of Columbia, on September 16, 1962, when the Spell car was stolen.

Detective Smith, of the Metropolitan Police Department, interviewed Travers at the District of Columbia General Hospital on December 1, 1962. He testified that Travers told him he had purchased the stolen car in Virginia from one Chester Williams; that as Williams could not give him a title, he made his Maryland junk purchase so as to obtain a District of Columbia title for the car bought from Williams. It appears, however, that Travers submitted the Maryland title to the Division of Motor Vehicles on September 5, 1962, ten or eleven days before the Spell car was stolen.

On this evidence the jury found Travers not guilty of the unauthorized use of the Spell car in the District of Columbia between about September 16, 1962, and about November 16, 1962. It found him guilty, however, of the charge that on or about November 16, 1962, he transported the Spell car from the District of Columbia into Maryland, knowing it had been stolen. This appeal followed.

■■ The unexplained possession of goods lately stolen permits, but does not require, the inference that the possessor was the thief, even though there was no direct evidence of the larceny. In prosecutions solely under 18 U.S.C. § 2312 (the basis of count two), where of course only the interstate transportation of a stolen motor vehicle is charged (without accusa-

---

1. The public serial number is shown on a plate attached to the door jamb. The confidential number is on the frame.

2. The prosecution sought to prove Travers was the driver by an alleged bullet crease on the seat cover on the driver's side.

tion of the initial theft which is not a federal offense), the courts permit the inference from unexplained possession in state B of a motor vehicle lately stolen in state A, that the possessor transported it from state A to state B, knowing it had been stolen.

This permissible inference in cases under the federal statute is a corollary of the inference permitted in larceny cases from the unexplained possession of recently stolen goods. Under the decided cases, unexplained possession of a stolen motor vehicle justifies the inference that the possessor stole it. So, if the defendant is found in possession in another state, it may also be inferred that he transported the car from the state in which he stole it into the state where he was found in possession.

Several courts of appeals have had occasion [3] to note this relationship between the inferences: that the inference of interstate transportation depends upon the inference of theft. The Ninth Circuit said in Morandy v. United States, 170 F.2d 5, 6 (1948), *cert. denied* 336 U.S. 938, 69 S.Ct. 741, 93 L.Ed. 1097 (1949):

> "\* \* \* Since the jury were at liberty to infer that appellant stole the car, they were necessarily warranted in concluding that he transported it, knowing it to be stolen, to the place where it was found in his possession."

To the same effect is Battaglia v. United States,[4] where the Fourth Circuit said:

> "\* \* \* The decision [Bollenbach v. United States] does not repudiate the rule established by a myriad of decisions that possession of recently stolen goods will support an inference that the possessor is guilty of the theft; and *if this inference be tenable, it is equally reasonable to infer that the supposed thief engaged in the removal of the stolen property to the point where it was found in his possession.* It seems absurd to us to say that the possession of a stolen car in the state of destination gives rise to an inference that the possessor stole the car in the state of origin, but permits no inference that he was a party to the asportation."  (Emphasis added.)

The *Battaglia* reasoning was approved and adopted in Prince v. United States,[5] where the Sixth Circuit also indicated that the inference of unlawful interstate transportation which may be drawn from unlawful possession in the second state flows from the inference that the unlawful possessor had stolen the property in the state of origin. And in the *Bray* case [6] we indicated the same thinking when we said the *Bollenbach* opinion "does not bar an inference from possession of recently stolen goods that the possessor *has stolen and transported them.*"  (Emphasis added.)

We conclude, therefore, upon reason and upon ample authority as well, that the inference of interstate transportation which may be drawn from unexplained possession of a stolen automobile in a second state springs from and depends upon a prior inference from such possession that the possessor had stolen the car in the first state. And this is true even in those federal districts where the theft itself—which is not a federal offense—is of course not charged in the indictment.

Hence, we conclude that, despite the absence of direct evidence of guilt under either count of the indictment, the trial judge correctly permitted the jury to infer guilt under both counts if it found that Travers was in possession of Spell's automobile in Maryland on November 16 and if it was not satisfied

---

3. They did so in distinguishing Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), frequently relied on by defendants in opposition to the inference doctrine.

4. 205 F.2d 824, 827 (1953).

5. 217 F.2d 838 (1954).

6. Bray v. United States, 113 U.S.App.D.C. 136, 140, 306 F.2d 743, 747 (1962).

with the explanation offered for such possession. He said:

"* * * If you find beyond a reasonable doubt that the defendant exclusively possessed the automobile in question, that he exclusively possessed it shortly after its theft from the place where it was parked in Washington, D. C., and that such possession is not consistent with innocence of the offenses charged, you may infer, although you are not required to do so, and it is a matter entirely for your judgment, that the defendant is guilty of the crimes charged."

The judge left it to the jury to determine whether Travers's possession two months after the theft was "shortly after" the car was stolen; he correctly added that the longer the interval, the weaker the inference.

We note that the trial judge did not tell the jury it could infer guilt under count two without first inferring guilt under count one. He used the plural only: "[Y]ou may infer * * * that the defendant is guilty of the *crimes* charged." So, in acquitting under count one and convicting under count two, the jury went beyond the literal wording of this part of the court's charge.[7]

█ Counsel for Travers requested the trial judge to instruct the jury that if it acquitted under count one it would be obliged to acquit under count two, but the request was refused. This refusal was error and in connection with the misleading instruction pointed out in footnote 7, led directly to the conviction under count two despite the acquittal under count one. The requested instruction was in accord with the *Morandy, Battaglia* and *Prince* cases, *supra;* had it been given, the jury would have been clearly told that it could not infer from possession in Maryland, standing alone, that Travers had transported the car from the District, unless it first inferred that he had stolen it in the District.

So, if this instruction had been given, and if the erroneous instruction to which we have referred in footnote 7 had not been given, there would have been no basis for the jury's misunderstanding of the inference instruction which was given. For it would have been known that Travers could not possibly be found guilty of transporting the Spell car from the District of Columbia into Maryland as charged in the indictment if he did not operate the car in the District. Interstate transportation by appellant did not occur if there was no transportation by him in the District, and the jury verdict of not guilty on count one necessarily rejected the only evidence that would have supported a guilty verdict under count two. This is not a case of mere inconsistency, tolerable under Dunn v. United States, 284 U.S. 390, 393–394, 52 S.Ct. 189, 76 L.Ed. 356 (1932) ; here the failure to instruct, as requested, that guilt on count two was entirely dependent on a finding of guilt under count one, was prejudicial to appellant, and we must perforce reverse the judgment on count two.[8]

---

7. Perhaps the jury was misled by a later portion of the charge, which read:

   "If you find that each and all of the essential elements of either the First Count or the Second Count, or both counts, have been established beyond a reasonable doubt, your verdict will be guilty on such count or counts.

   "If you do not so find in respect of the First Count or the Second Count, or both counts, your verdict will be not guilty on such count or counts."

8. We are not to be understood as holding that Travers was necessarily innocent of wrongdoing. From his possession of the car stolen two months before in the District of Columbia, which at the time of its discovery on November 16 bore the public serial number of his Virginia junk purchase and the D. C. tags of his Maryland junk purchase, an inference might be drawn that he knew that the car had been stolen. Section 2313 of Title 18 (1958) provides:

   "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same

■ Normally, reversal for prejudicial failure to give a proper instruction leads to a remand for a new trial where that instruction is then given. Here, however, appellant having been acquitted on count one, no new trial is permissible on that count; thus, no occasion will arise for an instruction on interrelationship of proof under the two counts. The Supreme Court has held the doctrine of collateral estoppel[9] fully applicable to criminal cases. Sealfon v. United States, 332 U.S. 575, 578–580, 68 S.Ct. 237, 92 L.Ed. 180 (1948), discussed in United States v. Williams, 341 U.S. 58, 63, 71 S.Ct. 595, 95 L.Ed. 747 (1951); see United States v. Oppenheimer, 242 U.S. 85, 87–88, 37 S.Ct. 68, 61 L.Ed. 161 (1916); United States v. Adams, 281 U.S. 202, 205, 50 S.Ct. 269, 74 L.Ed. 807 (1930) (dictum that judgment "conclusive upon all that it decided"); Frank v. Magnum, 237 U.S. 309, 333–334, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (dictum).[10] In the Sealfon case, the Court said, " * * * res judicata * * * operates to conclude those matters in issue which the verdict determined though the offenses be different." 332 U.S. at 578, 68 S.Ct. at 239. The verdict on count one in the present case determined that appellant was not guilty of the unauthorized use of the allegedly

stolen automobile *in the District of Columbia*. The Government may not again try appellant on count two by means of the twofold inference since the jury has already rejected the first part of that inference.

The Court in *Sealfon* held that the prosecution may not at a later trial have the opportunity "to prove * * * [that which was] crucial[11] to the prosecution's case and which was necessarily adjudicated in the former trial * * *." 332 U.S. at 580, 68 S.Ct. at 240. But, as we have stated, all that the jury's acquittal on count one necessarily adjudicated was that appellant was not guilty of unauthorized use of the car *in the District*, not that he had had no connection with it in the District resulting in its "interstate" transportation into Maryland. Thus, if the Government represents to the District Court within thirty days that it can offer competent evidence of appellant's contact or connection with possession or use of the car within the District of Columbia, a new trial may be conducted on count two;[12] absent such representation within thirty days from the date of this opinion, the District Court is directed to dismiss the indictment as to count two.

Reversed for further proceedings.

---

to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

But appellant was not charged in the present indictment with violation of that statute. Nor could he have been in this jurisdiction, for that violation, if it occurred, took place in Maryland.

9. See RESTATEMENT, JUDGMENTS § 68(1) (1942).

10. And see Hoag v. New Jersey, 356 U.S. 464, 470–471, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958) (dictum); Yates v. United States, 354 U.S. 298, 335–336, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) (dictum); Collins v. Loisel, 262 U.S. 426, 430, 43

S.Ct. 618, 67 L.Ed. 1062 (1923), (dictum); cf. Emich Motors Corp. v. General Motors, 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951). *Compare* United States v. Williams, 341 U.S. 70, 85–86, 71 S.Ct. 581, 95 L.Ed. 758 (1951) (concurring opinion) *with id.*, 341 U.S. at 95–96, 71 S.Ct. 581 (dissenting opinion).

11. As to cruciality, compare Yates v. United States, *supra* note 10, 354 U.S. at 335–337, 77 S.Ct. 1064.

12. *Cf.* Mogall v. United States, 333 U.S. 424, 425, 68 S.Ct. 487, 92 L.Ed. 783 (1948) (per curiam.)