Eddie Lawrence **PHILLIPS**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 73–2516.

United States Court of Appeals,
Fourth Circuit.

Argued April 2, 1974.

Decided Aug. 13, 1974.

Alan P. Owens, Norfolk, Va., for appellant.

J. Brian Donnelly, Asst. U. S. Atty., for appellee.

Before CRAVEN, ADAMS* and RUSSELL, Circuit Judges.

ADAMS, Circuit Judge:

This appeal calls for an application of the time-honored principle of collateral estoppel[1] in a somewhat unusual factual setting.

I.

The appellant, Eddie Lawrence Phillips, was indicted under 18 U.S.C. §§ 2113(a) and (d), and charged with robbing a federally insured bank in Nansemond, Virginia. On April 16 and 17, 1973, Phillips was tried before a jury. At that trial, the government sought to prove that Phillips was one of four armed men who had entered the bank, perpetrated a robbery in the bank during which a gun was fired, and then made off with some $34,000 in bank funds. Phillips' counsel sought to establish an alibi defense, and specifically challenged prosecution witnesses whose testimony tended to place Phillips in the bank during the robbery.

At the conclusion of the evidence, and after closing statements by counsel, the district judge proceeded to instruct the jury on, among other things, the necessary elements of the crimes charged.[2] The jury retired to consider its verdict, but before concluding its deliberations posed the following query to the district judge:

"If we believe that Phillips was involved in the bank robbery *but not at the bank at the time of the robbery* is he considered guilty or not guilty?"[3]

(Emphasis added)

---

\* United States Circuit Judge for the Third Circuit sitting by designation.

1. The term "collateral estoppel" is itself of comparatively recent coinage. *See* Developments—Res Judicata, 65 Harv.L.Rev. 818, 840 (1952). However, the broader principle of *res judicata*—of which collateral estoppel is an aspect—has roots in Roman law, in early English practice, and in continental jurisprudence. *Id.* at 820. The policy rationales underlying the two doctrines are essentially the same. *See* Cleary, Res Judicata Reexamined, 57 Yale L.J. 339, 344 (1948).

2. 18 U.S.C. § 2113(a) provides, in part, that: "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money . . . belonging to, or in the care, custody, control, management, or possession of, any [federally insured] bank . . . or "Whoever enters, or attempts to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank . . . or any larceny Shall be fined not more than $5000 or imprisoned not more than twenty years, or both."

18 U.S.C. § 2113(d) provides that: "Whoever in committing . . . any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

3. Tr. 342, trial of April 16, 17, 1973.

The district judge responded to the jury's question with the following supplementary instruction:

"I specifically tell you that insofar as the question of robbery of the bank, *if you do not believe that Phillips was in the bank, he could not be found guilty of the crime of robbery of that bank.* If you believe that the event, that his participation was not as one of those who were in the bank, I repeat, you could not find him guilty of robbery of that bank." [4] [Emphasis added]

However, the district court proceeded to instruct the jury that it might find Phillips guilty of possession of, or disposing of, what he knew to be the proceeds of the bank robbery. This offense was styled by the trial judge a "lesser included offense" under the indictment for bank robbery.[5]

Ten minutes after the supplementary instruction was given, the jury returned the following verdict:

"We, the jury, find the defendant guilty of the lesser offense of possession of stolen money with knowledge that the money was stolen from the bank." [6]

On July 18, 1973, the district court set aside the conviction based on possession, on the grounds that it was not included in the indictment, and granted Phillips a new trial, "to proceed only upon the lesser included charge of possession of money, knowing the same to have been stolen in a bank robbery." In September of 1973, the grand jury issued a new indictment, under U.S.C.A. § 2113(c), charging Phillips only with illegally possessing the money which he had earlier been indicted for stealing.[7] On motion by the government, the earlier indictment for bank robbery was dismissed.

Phillips proceeded to trial upon the new indictment on November 14, 1973. Prior to the swearing in of the jury, Phillips' counsel moved the district court to prohibit the introduction of any evidence tending to show Phillips' presence in the bank at the time of the robbery. The stated ground for this motion was that the issue of Phillips' presence at the bank during the robbery had been adjudicated in Phillips' favor at the first trial.

Counsel for Phillips maintained that the first jury, by having failed to convict him of bank robbery, the offense for which he was primarily charged in the first trial, had determined that he was not in the bank during the robbery. Phillips' motion to exclude evidence showing his participation in the robbery was overruled.

The jury was sworn, the second trial proceeded, and the government, over continuing objection by Phillips' counsel, proferred evidence tending to establish that Phillips participated in the robbery itself, and specifically that he had been in the bank. Government counsel made several statements to show that Phillips had taken an active part in the robbery.[8] Before the jury returned, the district court gave the following instruction regarding the evidence of Phillips' involvement in the robbery:

"Any evidence admitted at this trial concerning statements alleged to have been made by the defendant that he participated or had any connection with the bank robbery was admitted only on the question of knowledge of the defendant that if he possessed any money taken in the robbery he possessed it knowing it had been stolen." [9]

The jury found Phillips guilty of possession of the stolen money, with knowledge that it had been stolen.

4. Tr. 346, trial of April 16, 17, 1973.

5. Tr. 346, trial of April 16, 17, 1973.

6. Tr. 349, trial of April 16, 17, 1973.

7. *See* 18 U.S.C. § 2113(c). The government's attempt to obtain a new indictment on the possession charge stemmed, apparently, from its view that possession under the sub-

section (c) is *not* a "lesser included offense" under subsection (a). We assume, with the government, that an offense under (c) is not a lesser included offense under (a). The dissent appears to make the contrary assumption.

8. Tr. 15, trial of Nov. 14, 1973.

9. Tr. 285, trial of Nov. 14, 1973.

On this appeal Phillips invokes the principle of collateral estoppel and contends, *inter alia*, that the district court erred in admitting evidence at the second trial that tended to prove he was present at the bank when the robbery took place. Phillips further contends that testimony as to what occurred in the bank at the time of the robbery prejudiced him, since it showed the use of force on bank personnel. Phillips asserts that because of the prejudicial nature of this evidence, he is entitled to a new trial. We agree, and reverse Phillips' conviction.

## II.

█ Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[10] Considerations of judicial economy, conservation of public funds, and avoidance of multiple litigations underly the doctrine.[11] Implicit, of course, in any limitation on relitigation of issues already determined in the criminal context is an appreciation of the substantial burdens, psychological as well as otherwise, placed on one who must defend against criminal prosecution.[12] At least since 1916, collateral estoppel has been an acknowledged rule of federal criminal law.[13] Since 1970, the rule has been recognized as an integral aspect of federal constitutional law as well, under the Fifth

Amendment's guarantee against double jeopardy.[14] This Court, too, has heretofore signalled its acceptance of the general principle, and its readiness to apply it in an appropriate case.[15]

Perhaps the most vexatious task facing a court in the application of collateral estoppel is the determination whether a particular factual issue has been settled by the prior adjudication.[16] At common law, the inquiry was often an excruciatingly technical one, the court having to cull "ultimate fact" from "mediate data" with an almost thomistic exactitude.[17] The federal courts, however, have exhibited a marked tendency to forego over-refined technique in favor of a more practical approach, at least in criminal cases. This modern attitude is articulated in Ashe v. Swenson, *supra*:

"The Federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hyper-technical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry

10. Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); United States v. Nash, 447 F.2d 1382, 1385 (4th Cir. 1971).

11. Mayers and Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv. L.Rev. 1, 31 (1960).

12. *See* Mayers and Yarbrough, *supra*, at 31–32.

13. *See* United States v. Oppenheim, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916).

14. *See* Ashe v. Swenson, *supra*, 397 U.S. at 445, 90 S.Ct. 1189. Since the contours of collateral estoppel in federal criminal cases seem to be coextensive with those established by the Double Jeopardy Clause, we perceive no

need to rest our decision in this case on constitutional grounds. *See* Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948). Nonetheless, requiring Phillips to counter evidence introduced by the government tending to show his presence at the bank for a second time seems akin to the type of harassment against which the Double Jeopardy Clause was intended to protect. *See* Mayers and Yarbrough, *supra*, at 4–5.

15. United States v. Nash, *supra*.

16. *See* Mayers and Yarbrough, *supra*, at 33–39.

17. *See, e. g.,* Judge L. Hand's discussion in The Evergreens v. Nunan, 141 F.2d 927 (2d Cir. 1944).

'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180. Any test more mechanically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." [18]

Among the "hyper-technical" devices to be eschewed under this view, then, is the notion that a general verdict of acquittal "may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases . . . " [19] Each general verdict of acquittal must be examined carefully, to determine what facts, if any, can be deemed to have been adjudicated.

■ Pursuing this approach, and after reviewing the indictments, the trial transcripts, the various colloquys between court and counsel, the exchanges between the court and jury, the jury's decision in the first trial to acquit Phillips of bank robbery, and setting the "inquiry into a practical frame," we are convinced that the first jury effectively determined that Phillips was not in the bank at the time of the robbery.

Several circumstances support this conclusion. First, the jury inquired specifically whether a finding of *presence in the bank* was requisite to a conviction under the robbery statute. They were instructed, in no uncertain terms, that it was.[20] A scant ten minutes after being so enlightened, they declined to return a verdict of guilty on the robbery charge. A "realistic and rational" appraisal of these facts tends to show that the pivotal factual question in the jury's deliberations was whether Phillips was present in the bank. The jury's decision not to convict, following so closely upon the heels of clarifying instruction, leads almost inexorably to the conclusion that, at least in the jury's eye, Phillips was not in the bank at the time of the robbery, or that the government had failed to prove that Phillips was in the bank at the time of the robbery. Any test more mechanically restrictive "might well amount to a rejection of the rule of collateral estoppel."

The conclusion by the first jury that Phillips was not in the bank is buttressed by a secondary matrix of factual circumstances. None of the witnesses called by the prosecution at the first trial could positively identify Phillips as one of the bank robbers. Moreover, Phillips' own witnesses testified that he was elsewhere at the time of the robbery. There thus existed a rationally supportive basis in the evidence for a conclusion by the jury that Phillips was *not* in the bank. Although it is possible, as the dissent suggests, to infer that the jury did not specifically determine the question whether Phillips was present at the bank, the evidence at the first trial, when taken together with the jury instructions and other factors, leaves little doubt concerning the significance of the jury's failure to convict Phillips of robbery.

The dissent does not adopt the foregoing analysis for two reasons. First, it ascribes some weight to the fact that the jury did not affirmatively state that it found Phillips not guilty of bank robbery but, instead, convicted him of pos-

---

18. 397 U.S. at 444, 90 S.Ct. at 1194 (footnotes omitted). *See also* United States v. Kramer, 289 F.2d 909 (2d Cir. 1961); United States v. DeAngelo, 138 F.2d 466 (3d Cir. 1943).

The quoted language from *Ashe* indicates that, though the jury in this case returned no explicit "not guilty" verdict on the charge of bank robbery, its failure to return a verdict of guilty must be taken as an acquittal for all intents and purposes.

19. United States v. Kramer, *supra*, 289 F.2d at 913.

20. It appears that, to secure a conviction of bank robbery under 28 U.S.C. § 2113(a), the presence of a defendant in the bank *is* a requisite element of the offense. *See* Note 2, *supra*.

session of stolen money while simply remaining silent with respect to the bank robbery count. The dissent correctly notes that the jury's response to the bank robbery charge is somewhat ambiguous. But in light of the substantial interests of criminal defendants at stake, it would appear inappropriate to attach significance to the absence of an affirmative statement by the jury indicating its finding of not guilty when, for all practical purposes, the jury's silence is to be treated in the same manner as an affirmative statement. For example, the defendant is entitled to a judgment of acquittal and, as the dissent acknowledges, the defendant receives full double jeopardy protection.

Second, the dissent suggests several explanations for the jury's failure to convict Phillips of bank robbery which are not bottomed on the assumption that the jury unanimously agreed that Phillips was not present in the bank at the time of the robbery. This speculation does not seem particularly persuasive when juxtaposed against the jury's question concerning the necessity of deciding that Phillips was in the bank in order to convict him of bank robbery, the judge's response in the form of a supplemental instruction and the jury's verdict shortly thereafter. Moreover, once a criminal defendant has undergone a trial and a favorable verdict, considerations of fairness and traditional judicial reluctance to explore the factors prompting jury

decisions seem to dictate resolving doubts, at least under circumstances as here, in favor of the defendant.[21]

Having ascertained that the result at the first trial established Phillips' absence from the bank during the robbery, the government was thus foreclosed from relitigating the question of Phillips' presence in the bank. The trial court's limiting instruction, to the effect that evidence of presence in the bank was intended only to show Phillips' knowledge that the funds he received were stolen, was insufficiently protective.

At Phillips' second trial, government counsel opened his case by telling the jury that he hoped to prove Phillips' participation in the bank robbery.[22] One government witness, the president of the bank, testified as to the aggravated nature of the robbery.[23] Another, Joseph Warren, testified that Phillips had told him that he (Phillips) had robbed the bank, and had been inside it during the robbery.[24] Finally, during his summation, government counsel again referred to Phillips' participation in the robbery, particularly as evidenced by Warren's testimony.[25]

Thus, the government sought to prove precisely the same factual issue that had been foreclosed by the result in the first trial. Admission of evidence on this issue was erroneous.[26] Moreover, government counsel's reference to

21. The dissent also attempts to buttress its position on purely policy grounds. In so doing, it cites language of Judge Friendly in U. S. v. Maybury, 274 F.2d 899 (2d Cir. 1960), *Maybury*, however, involved inconsistent verdicts rendered by a judge, sitting without a jury. To reach such verdicts, the judge was required to make a factual finding on one count for the defendant in the context of a particular dispute and to make a finding against the defendant on precisely the same issue in a second count. Thus, unlike this case, the same tribunal found both for and against the defendant on a particular issue. Refusal to apply collateral estoppel in *Maybury*, therefore, is not necessarily inconsistent with the application of the doctrine in this case. This conclusion may be supported by

the fact that the appellate court carefully distinguished findings of fact by a judge from verdicts by a jury.

22. Tr. 15, trial of Nov. 14, 1973.

23. Tr. 64, trial of Nov. 14, 1973.

24. Tr. 120, trial of Nov. 14, 1973.

25. Tr. 257, trial of Nov. 14, 1973.

26. Concededly, the record in this case did not manifest the same type of prosecutorial "bad conduct" adverted to in *Ashe, see* 397 U.S. at 445–447 and n. 10, 90 S.Ct. 1189. Nonetheless, the principle enunciated in that case must be applied here, since there was no indication given by the Supreme Court that prosecutorial "bad conduct" is a prerequisite to application of collateral estoppel.

such evidence in his opening and closing statements compounded the error. Nor, after reviewing all the evidence introduced at Phillips' second trial, can we say that the admission of evidence tending to show Phillips' presence at the bank and the use of physical coercion during the robbery constituted harmless error.[27] For example, the trial court permitted at the second trial, over defense counsel's objections, testimony to the effect that there was a gunshot during the perpetration of the bank robbery.[28] Once the first jury had refused to convict Phillips of bank robbery, such evidence, under the foregoing analysis, was inadmissible. The prejudicial impact of this testimony was potentially great, especially when the prosecutor also attempted to link Phillips with the bank robbery, and may not be overlooked on review. Nowhere in the record or in the briefs appears a justification for admission at the second trial on possession of testimony relating to events during the bank robbery. Such testimony would have been apposite only for a charge under 18 U.S.C. § 2113(d) but, at the second trial, no charge under this section was pending against Phillips.

Accordingly, the judgment of conviction will be reversed, and the case remanded to the district court for a new trial.

CRAVEN, Circuit Judge (dissenting):

I respectfully dissent from the decision to reverse Phillips' second conviction for possessing stolen bank money. There are, I believe, two independent reasons why collateral estoppel should not apply in this case.

First, Phillips' acquittal of bank robbery was only an implicit acquittal, arising by operation of law from the verdict of guilt on a lesser included offense.[1] I would hold that such an implicit acquittal cannot be the basis for collateral estoppel because it leaves doubt whether the jury has made any factual determination in favor of the accused. For the purposes of subsequent prosecution for the *greater* offense, the jury's silence is properly given the effect of an acquittal. It is unnecessary to speculate about the jury's actual decision because the doctrine of double jeopardy does not require an actual verdict. *See* United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). When the jury has been impaneled and discharged under these circumstances, the exposure to conviction on the greater charge is enough to bar reprosecution. Green v. United States, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L.Ed.2d 199 (1957). For collateral estoppel, however, an actual verdict is required, because the doctrine is premised on a factual determination in favor of the accused. The jury's silence on the primary charge, coupled with conviction on a lesser offense, may suggest the kind of factual determination on which collateral estoppel is premised, but there is always a substantial likelihood that the jury reached no agreement at all on the primary charge. *See* United States ex rel. Hetenyi v. Wilkins, 348

27. See Rule 52(a), Federal Rules of Criminal Procedure.

28. The following colloquy took place during the direct examination of the government's witness, Allen C. Watson, the President of the First Virginia Bank of Nansemond:
Q. Mr. Watson, you previously testified as to whether or not the individuals had weapons. Do you know whether or not any weapon was discharged in the bank?
MR. OWENS [counsel for Phillips]: Objection, your Honor.
The Court: Overrule the objection.
MR. OWENS: It has nothing to do with our case.

The Court: All right, I'll overrule the objection.
The Witness: When I dashed into my office, I immediately heard a—what sounded like a gunshot.
Tr. 69, trial of November 14, 1973.

I. The verdict is quoted on page 3 of the majority opinion. Like the majority, I find it unnecessary to decide whether possession of stolen bank money under 18 U.S.C. § 2113 (c) is included in the offense of bank robbery under § 2113(a). I have merely assumed, for purposes of this case, that it is.

F.2d 844, 856–857 (2d Cir. 1965), cert. denied, 383 U.S. 913, 86 S.Ct. 896, 15 L. Ed.2d 667 (1966).

If Phillips' first jury had returned a clear verdict of acquittal ten minutes after the trial judge delivered the supplemental instruction,[2] I would agree that the jurors had probably decided Phillips was not in the bank at the time of the robbery. But other aspects of this case cast substantial doubt on the jury's decision. The supplemental instruction on presence in the bank and the instruction on the lesser included offense were both given in response to the jury's question. The jury was not told that it had to find Phillips not guilty of bank robbery before it could find him guilty of possessing stolen money. As a result, the jury could have reached its verdict without ever deciding whether Phillips was in the bank. The jury's question does indicate that some jurors believed Phillips was not in the bank, but I do not think it proves unanimity where the verdict is silent. An aiding and abetting instruction had been given in the original charge, and the jury may have hoped the judge would give them an instruction that would relieve them of deciding whether he was in the bank.[3]

In summary, paraphrasing Ashe v. Swenson, 397 U.S. at 444, 90 S.Ct. 1189, 25 L.Ed.2d 469, I am convinced that a rational jury could have reached its verdict without deciding the issue which the defendant seeks to foreclose from consideration.

Second, even if I agreed that the implied acquittal could be set up as a collateral estoppel, I would not allow its use to restrict proof on retrial of the *lesser* charge. Retrial in cases like this one harbors none of the prosecutorial abuses that supplied the rationale of Ashe v. Swenson and its nonconstitutional forbears. *See* United States v. Kramer, 289 F.2d 909, 916 (2d Cir. 1961). The prosecutor cannot be accused of using the first trial as a practice run, of recasting the charge in slightly different form to get a second chance for conviction, or of harassing the defendant by repeatedly calling him to answer the same proof. *Cf.* Ashe v. Swenson, 397 U.S. at 445–447 & n. 10, 90 S.Ct. at 1195; United States v. Nash, 447 F.2d 1382, 1387 (4th Cir. 1971) (Winter, J., concurring); United States v. Davis, 369 F.2d 775, 780 (4th Cir. 1966), cert. denied, 386 U.S. 909, 87 S.Ct. 858, 17 L.Ed.2d 783 (1967). With or without collateral estoppel, the second trial will not be a replay of the first, and the second jury cannot be invited to convict the accused because he is guilty of the first crime. Evidence that tends to prove the first crime may not be used unless it is relevant to the second, and even then it may be excluded if the trial judge believes it more prejudicial than probative. *See* United States v. Woods, 484 F.2d 127, 134 (4th Cir. 1973), cert. denied, 415 U. S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974); United States v. Smith, 446 F. 2d 200 (4th Cir. 1971).

Applying collateral estoppel to retrials like this one will serve none of the purposes of the doctrine, and I believe it will unjustifiably tip the balance in favor of the defendant. The acquittal operates as a complete bar to reprosecution on the bank robbery. That is enough. That the trial judge belatedly charged on the lesser included offense cuts both ways: it was the basis for vacating the conviction[4] but also may have saved the

---

2. Quoted at page 229 of the majority opinion.

3. The record of the first trial does not show why the jury was not instructed that Phillips could have aided and abetted the bank robbery without being present at the bank. I would be surprised if the law were otherwise. *See* United States v. Waters, 461 F.2d 248 (10th Cir.), cert. denied, 409 U.S. 880, 93 S.Ct. 207, 34 L.Ed.2d 134 (1972); Asher v.

United States, 394 F.2d 424 (9th Cir. 1968); Tarkington v. United States, 194 F.2d 63 (4th Cir. 1952).

4. In Phillips' case the trial judge granted defendant's motion for new trial, giving as his reason:

[I]n an abundance of caution, it may be that the charge of the lesser offense, given as it was, after a time of deliberation, could have been unduly influencing upon the jury.

defendant from a conviction for bank robbery. *See* United States v. Maybury, 274 F.2d 899 (2d Cir. 1960); Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, 16–28 (1960). If the defendant can also use the acquittal as collateral estoppel on retrial of the conviction, he may be able to keep the second jury from hearing evidence that helped persuade the first jury of his guilt. This result, in Judge Friendly's words, "would convert the guarantee of double jeopardy from a shield into a sword." United States v. Maybury, 274 F.2d at 905.[5]

Ashe v. Swenson did not pretend to define the outer limits of collateral estoppel, since the Court there found a clear case for applying the doctrine. In concluding that collateral estoppel is embodied in the concept of double jeopardy, the Court said: "For whatever else that constitutional guarantee may embrace, . . . it surely protects a man who has been acquitted from having to 'run the gantlet' a second time." 397 U.S. at 445–446, 90 S.Ct. at 1195 (citations omitted). This principle should not be applied when its only effect is to help a person convicted of a lesser offense elude fair retrial on the charge. Collateral estoppel is a doctrine of fairness. It does not seem to me unfair to subject the appellant to retrial for a lesser offense of which he had been convicted. I think the defendant got more than he was entitled to when the first conviction was vacated. To set aside the second conviction is too much of a good thing.

App. 3. The trial judge had omitted the instruction on possessing stolen money from the original charge at the request of defense counsel who, in the judge's words, "was willing to go whole hog or nothing." Tr. 343, Trial of April 16, 17, 1973. The jury's question persuaded the judge that withholding the instruction was error.

5. Only a few federal cases have applied collateral estoppel as between an acquittal and a conviction rendered at the same trial. United States v. Pappas (Appeal of Mischlich), 445 F.2d 1194 (3d Cir.), cert. denied, 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971); Green v. United States, 426 F.2d 661 (D.C.Cir. 1970); Travers v. United States, 118 U.S.App.D.C. 276, 335 F.2d 698, 703 (1964) (dictum); Cosgrove v. United States, 224 F.2d 146 (9th Cir. 1954), modified on rehearing, 224 F.2d 157 (1955); United States v. Flowers, 255 F.Supp. 485 (E.D. N.C.1966). *Compare* United States v. Finnerty, 470 F.2d 78 (3d Cir. 1972); United State v. Carbone, 378 F.2d 420 (2d Cir.), cert. denied, 389 U.S. 914, 88 S.Ct. 242, 19 L.Ed. 2d 262 (1967). In United States v. Maybury, 274 F.2d 899 (2d Cir. 1960), a divided court reversed a conviction because it was inconsistent with an acquittal rendered at the same bench trial. Over Judge Lumbard's dissent, Judge Friendly and Judge Hand held that collateral estoppel would not bar retrial of the conviction. Judge Friendly also expressed his opinion that collateral estoppel should not be allowed to restrict the evidence on retrial. Judge Hand did not address this final point, apparently because it was unnecessary for disposition of the immediate appeal.