*242 BENTON, J.,
concurring.
For the reasons I have previously explained in Hudgins v. Commonwealth, 40 Va.App. 1, 11-17, 577 S.E.2d 505, 510-13 (2003) (Benton, J., concurring), I would hold that principles of collateral estoppel bar this prosecution. Therefore, I too would reverse the conviction.
In the first trial, Tarik H. Hudgins was tried for robbery and acquitted after the presentation of evidence. The second indictment, which charged a larceny arising from the same incident, brought into focus traditional concerns about the protections afforded by the guarantees of the Double Jeopardy Clause.
“The development of the Double Jeopardy Clause from its common-law origins ... suggests that it was directed at the threat of multiple prosecutions.... ” Thus ... the “controlling constitutional principle” focuses on prohibitions against multiple trials. At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression. The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to convict the accused, “thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.” “[SJociety’s awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws.”
United States v. Martin Linen Supply Co., 430 U.S. 564, 568-69, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977) (citations omitted).
The record establishes that on February 28, 2001, a grand jury indicted Hudgins for robbing “Brinkley [on October 1, 2000] of ... currency or other personal property.” A judge tried Hudgins on that charge and acquitted him on March 16, *243 2001. Ten days later, the grand jury returned another indictment for grand larceny, alleging that on “October 1, 2000, [Hudgins] did steal property having a value of five dollars ... or more from the person of ... Brinkley.” Overruling Hudgins’s double jeopardy objection, the same judge tried him on this second indictment and convicted him of this larceny offense. At this second trial, the judge found and the prosecutor agreed that the property at issue in both indictments was the same bicycle. Indeed, the Commonwealth on appeal concedes this to be the case. Hudgins contends, as he did at trial, that the prosecution under this second indictment violates constitutional guarantees against double jeopardy.[9]
“It is well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been acquitted of the crime charged.” Bullington v. Missouri, 451 U.S. 430, 437, 101 S.Ct. 1852, 1857, 68 L.Ed.2d 270 (1981).
An acquittal is accorded special weight. “The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal,” for the “public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though ‘the acquittal was based upon an egregiously erroneous foundation.’ If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair.” The law “attaches particular significance to an acquittal.”
United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (emphasis added) (citations omitted). Put simply, “the Fifth Amendment guarantee against double jeopardy ... surely protects a man who has been acquitted from having to ‘run the gantlet’ a second time.” *244 Ashe v. Swenson, 397 U.S. 436, 445-46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970).
When Hudgins was first tried and acquitted on March 16, 2001 of the charge of robbery involving the bicycle, that proceeding acted as an acquittal also of the lesser-included offense of larceny of the bicycle. “The greater offense is ... by definition ‘the same’ for purposes of double jeopardy as any lesser offense included in it.” Brown v. Ohio, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226-27, 53 L.Ed.2d 187 (1977). Thus, just as an acquittal on a lesser-included offense bars a subsequent prosecution on the greater offense, an acquittal on a greater offense bars a subsequent prosecution on the lesser-included offense. Id. “[T]he sequence is immaterial.... Whatever the sequence may be, the Fifth Amendment forbids successive prosecution ... for a greater and lesser included offense.” Id. at 168-69, 97 S.Ct. at 2227. In other words, whenever a prosecutor can request a lesser-included instruction, a blanket acquittal is an implicit acquittal on each lesser included offense; and a later trial on any lesser-included charge would put the accused twice in jeopardy for the offense. These principles are well established. See Grafton v. United States, 206 U.S. 333, 351, 27 S.Ct. 749, 753-54, 51 L.Ed. 1084 (1907).
The indictment the grand jury issued on March 26,2001, ten days after Hudgins was acquitted of robbery, charged a grand larceny of the same bicycle that was involved in the robbery charge. When the trial judge acquitted Hudgins after trial on March 16, 2001 of the robbery charge, he did not convict Hudgins of the lesser offense of larceny. We do not know whether the prosecutor sought a larceny conviction in the first trial or, instead, decided to forego that option and to seek a second indictment, believing that Graves v. Commonwealth, 21 Va.App. 161, 462 S.E.2d 902 (1995), aff'd on reh’g en banc, 22 Va.App. 262, 468 S.E.2d 710 (1996), would permit that action.[10] *245 Whatever the prosecutor’s intention, the acquittal at the first trial necessarily acted as an acquittal of the larceny. As the Supreme Court noted in Grafton, when addressing an acquittal following a murder trial, “ ‘had the defendant been guilty, not of [the greater offense] but of [the lesser offense], he would have been found guilty of the latter offense upon that indictment.’” 206 U.S. at 351, 27 S.Ct. at 753 (citation omitted).
In that vein, the Supreme Court’s observation in Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), is pertinent to the acquittal that resulted from Hudgins’s first trial.
The petitioners were tried under a valid indictment in a ... court which had jurisdiction over them and over the *246 subject matter. The trial did not terminate prior to the entry of judgment.... It terminated with the entry of a final judgement of acquittal____ The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, “[t]he verdict of acquittal was final, and could not be reviewed ... without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution.”
Id. at 143, 82 S.Ct. at 672 (citations omitted). See also Smalis v. Pennsylvania, 476 U.S. 140, 144 n. 7, 106 S.Ct. 1745,1748 n. 7, 90 L.Ed.2d 116 (1986) (noting that “ ‘[t]he fact that “the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles” ... affects the accuracy of that determination but it does not alter its essential character’ ”); Arizona v. Rumsey, 467 U.S. 203, 211, 104 S.Ct. 2305, 2310, 81 L.Ed.2d 164 (1984) (holding that although the trial judge “relied on a misconstruction of the statute ... [in making findings concerning the criminal offense, that] error of law ... does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits”); Sanabria v. United States, 437 U.S. 54, 64, 98 S.Ct. 2170, 2179, 57 L.Ed.2d 43 (1978) (holding that “when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous”); Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) (holding that courts must “necessarily afford absolute finality to a jury’s verdict of acquittal—no matter how erroneous its decision”).
When, as in this case, “an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.” Ashe, 397 U.S. at 443, 90 S.Ct. at 1194. Thus, the Commonwealth could not relitigate the ultimate facts resolved in the first trial in Hudgins’s favor by the acquittal for robbery and necessarily for the larceny of the bicycle.
Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law ... [for] more than 50 years____
*247 [T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to “examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational [trier of fact] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.” The inquiry “must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.” Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180, 184. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based on a general verdict of acquittal.
Ashe, 397 U.S. at 443-44, 90 S.Ct. at 1194 (footnote omitted).
Unlike in Jones v. Commonwealth, 218 Va. 757, 240 S.E.2d 658 (1978), Hudgins alleges that the two indictments charged offenses involving a taking of the identical object. Cf. 218 Va. at 759, 240 S.E.2d at 660 (noting that the “[d]efendant does not contend that the two crimes of which he was convicted are identical offenses”). Hudgins contends that the same property was the subject of each indictment and that the same offense was the subject of both indictments. The Commonwealth agrees that the taking alleged in both indictments involved the same bicycle. This is precisely the circumstance that the constitutional guarantees against double jeopardy forbid.
A verdict of acquittal on the issue of guilt or innocence is, of course, absolutely final____
“The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrass *248 ment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.”
Bullington, 451 U.S. at 445, 101 S.Ct. at 1861. The values that underlie these concepts are based on the elemental principle that the “law attaches particular significance to an acquittal.” United States v. Scott, 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978).
In summary, when Hudgins was acquitted following the trial of the robbery involving the bicycle, he was necessarily acquitted of petit larceny of the bicycle. Brown, 432 U.S. at 168, 97 S.Ct. at 2226-27; Myers v. Commonwealth, 148 Va. 725, 729-30, 138 S.E. 483, 484 (1927). The Commonwealth could not later prosecute him for larceny, whether grand or petit, of the same bicycle after he was acquitted of the petit larceny in the first trial. “The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.” Brown, 432 U.S. at 169, 97 S.Ct. at 2227. Indeed, the policy behind the Double Jeopardy Clause “protects the accused from attempts to relitigate the facts underlying a prior acquittal.” Id. at 165, 97 S.Ct. at 2225.
Accordingly, I join in the judgment reversing the conviction.

. Hudgins’s attorney asserted in his brief en banc and at oral argument that collateral estoppel is a component of double jeopardy. See Ashe v. Swenson, 397 U.S. 436, 442-45, 90 S.Ct. 1189, 1193-95, 25 L.Ed.2d 469 (1970) (holding that the Fifth Amendment guarantee against double jeopardy embodies collateral estoppel as a constitutional requirement).

. In Graves, a trial judge "struck the evidence as to [the] robbery ... [indictment, and ruled] that grand larceny from the person is a lesser offense included within a charge of robbery and permitted the case to go forward on a charge of grand larceny from the person.” 21 Va.App. *245 at 163, 462 S.E.2d at 903. We reversed the conviction for grand larceny from the person and held as follows:
Because the [robbery] indictment against Graves did not set forth allegations of value or of theft from the person, it did not charge grand larceny from the person. Therefore, grand larceny from the person was not a lesser offense included within the robbery specification of the indictment.
Id. at 166, 462 S.E.2d at 904. Graves was not a double jeopardy case.
In deciding Graves, we merely found “guidance in Jones v. Commonwealth, 218 Va. 757, 240 S.E.2d 658 (1978)." 21 Va.App. at 165, 462 S.E.2d at 904 (emphasis added). The defendant in Jones was "convicted] of grand larceny of an automobile following his conviction of robbery involving larceny of money." 218 Va. at 758, 240 S.E.2d at 659. Although the defendant in Jones, unlike in Graves, contended that his conviction for larceny was barred by the principle of double jeopardy, he did "not contend that the two crimes of which he was convicted [were] identical offenses.” Id. at 759, 240 S.E.2d at 660. Indeed, the defendant "contend[ed] that the theft of the money underpaid] the robbery conviction and the theft of the car underpaid] the grand larceny conviction." Id. at 760, 240 S.E.2d at 661. Thus, the Supreme Court noted that “grand larceny of the car was not charged in the robbery indictment,” id. at 760, 240 S.E.2d at 660-61, and noted further that "the two thefts involved two separate and distinct acts of caption and two different acts of asportation.” Id. at 761, 240 S.E.2d at 661. Significantly, the Supreme Court held that because "theft is an essential component of robbery and charged as such in every robbery indictment ..., a robbery indictment includes all elements of whatever larceny offense it charges, whether grand or petit, and the larceny offense charged is, therefore, lesser-included in robbery.” Id. at 759-60, 240 S.E.2d at 660. Clearly, Hudgins’s case arises in a different posture than Graves and raises a related but different issue than Jones.