CARTER, Judge.
Barron Magee was charged by bill of information with possession of a firearm by a convicted felon (the instant offense), a violation of LSA-R.S. 14:95.1. Defendant pled not guilty and was tried by a jury, which found him guilty as charged. Subsequently, the trial court sentenced him to imprisonment at hard labor for a term of ten years. Defendant had previously been tried by a jury on a charge of manslaughter (arising out of the same incident which gave rise to the instant offense), and the jury had acquitted him of the charge. Defendant now appeals, alleging two assignments of error:
1. Permitting the state to prosecute defendant on the charge of being a felon in possession of a firearm after his acquittal of the charge of manslaughter, arising from the same incident, constituted reversible error under the doctrine of collateral estoppel.
2. Precluding the defense from introducing testimony relevant to the defense of justification was reversible error.
Assignment of error number two was not briefed on appeal and, therefore, is abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4.
The record reflects that the instant offense occurred on January 2, 1985, in St. Tammany Parish. The state and the defense stipulated that defendant had been convicted of aggravated battery on May 10, 1982, and that defendant had a .22 caliber revolver (state exhibit S-2) in his possession on January 2, 1985.
Gary L. Frisard of the Covington City Police Department responded to a reported shooting at a house on 807 North Filmore Street. He observed a black man, who appeared to have been shot, sprawled on the floor. Some other persons at the scene proceeded to take the victim to the hospital. Frisard walked out of the residence to his police unit. Defendant approached Fri-sard, identified himself, and said he had shot John Gallo. Frisard then advised defendant of his Miranda rights. Defendant then further stated he had a gun, lifting his sweater to display a .22 caliber revolver (S-2) in his waistband. Defendant gave the gun to Frisard, who placed him under arrest.
At his trial for the instant offense, Barron Magee took the stand in his own defense. Additionally, he presented the testimony of Charlotte McDow and John Ma-gee, his father.
Charlotte McDow testified that John Gallo had been her “fiance” for five years and that they had three children. She and Gal *273 lo terminated their relationship about three months prior to the shooting; and she started dating defendant on December 26, 1984. McDow testified that, on January 2, 1985, Gallo came to her home at about 3:00-3:30 p.m. Gallo was “agitated” and threatened her, which caused her some concern. While Gallo was there, defendant came inside her home. Defendant was not upset at the time. McDow did not call the police prior to the shooting because her telephone was not working properly.
John Magee testified that he was at McDow’s home at the time defendant went there. He testified that state exhibit S-2 (the gun) had been in his possession that afternoon. He, however, relinquished possession of the gun (S-2) to defendant at defendant’s request.
Defendant testified that he went to McDow’s home unarmed and that, after he got there, he obtained the gun from John Magee’s truck. At the time, Gallo was standing on McDow’s porch, at a distance of about twenty-five feet from defendant. Defendant testified that he took the gun with him into McDow’s residence because he felt his life was in danger. While he was inside McDow’s residence, Gallo threatened him. Gallo told him he would kill him if he lived at McDow’s residence. Defendant testified that Gallo walked past him to the kitchen. Defendant proceeded toward the door to leave McDow’s home. At that moment, Gallo approached defendant from behind with a steel ashtray. Defendant testified that he shot Gallo to prevent Gallo from killing him with the ashtray.
ARGUMENT
Defendant contends that collateral estop-pel bars the State from prosecuting him on the possession of a firearm charge after his acquittal on the manslaughter charge, relying on State v. Blache, 480 So.2d 304 (La.1985). Defendant reasons that, in acquitting him on the manslaughter charge, the jury determined that his use of a firearm was justified. Therefore, collateral estop-pel bars the instant prosecution for possession of a firearm by a felon, in which defendant reasserted the justification defense.
The record in this case shows that defense counsel argued the issue of collateral estoppel at the hearing on defendant’s motion for new trial. In her arguments to the trial court, defense counsel requested that the trial court undertake a full review of the record of defendant’s first trial. However, in finding that collateral estoppel did not apply in this case, the trial court stated: “I can’t look at the record [in defendant’s first trial] and say that the jury found that Barron Magee was justified in that.”
In Ashe v. Swenson, 397 U.S. 436, 444-445, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), the U.S. Supreme Court stated:
“Collateral estoppel” is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. * * *
The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to “examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.” The inquiry “must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.” Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240 [92 L.Ed. 180]. [emphasis added; footnote omitted]
Because the record reflects that the trial court did not examine the record of defendant’s first trial as requested by defense *274 counsel, we must vacate defendant’s conviction and sentence in this case and remand the case for a rehearing on defendant’s motion for new trial. Cf State v. Blache, supra. At the rehearing, defense counsel shall be allowed to introduce a transcript of the record of defendant’s first trial so that the trial court may decide whether defendant’s claim of collateral es-toppel has merit in light of the record in the prior proceeding, taking into consideration the pleadings, evidence, charge and other relevant matter, as required by Ashe v. Swenson, supra.
CONVICTION AND SENTENCE VACATED; REMANDED FOR REHEARING ON MOTION FOR NEW TRIAL.