ALFORD, Judge.
Barron Magee was charged by bill of information with possession of a firearm by a convicted felon (the instant offense), a violation of La.R.S. 14:95.1. Defendant pled not guilty and was tried by a jury, which found him guilty as charged. The trial court sentenced defendant to imprisonment at hard labor for a term of ten years without benefit of probation, parole or suspension of sentence. Defendant had previously been tried by a jury on a charge of manslaughter for killing John Gallo (a charge arising out of the same incident which gave rise to the instant offense), and the jury had acquitted him of the manslaughter charge.
Defendant filed two prior appeals pertaining to the instant offense. In defendant’s first appeal, this Court found patent error, i.e., that the trial court had failed to rule on defendant’s motion for new trial and motion for post verdict judgment of acquittal before imposing sentence. On that basis, we vacated defendant’s sentence and remanded the case to the trial court for a hearing and disposition relative to each of the outstanding motions. State v. Magee, 496 So.2d 562 (La.App. 1st Cir.1986).
After the trial court denied both motions and resentenced defendant, defendant filed his second appeal. In his second appeal, defendant appealed the trial court’s ruling denying his claim (which had been raised through defendant’s motion for a *1032 new trial) that, because he had been acquitted at the first trial, collateral estoppel barred the state’s prosecution of the instant offense. On appeal, we found that, although defendant had made a request that the trial court examine the record of defendant’s first trial in deciding the collateral estoppel claim, the trial court had rejected the collateral estoppel claim without conducting the requested examination. On that basis, we remanded the case for a rehearing on the motion for new trial;[1] and we ordered the trial court to permit defendant to introduce a transcript of the record of the first trial, in order that the trial court might decide the collateral estop-pel claim in light of the record in the prior proceeding, taking into consideration the pleadings, evidence, charge and other relevant matters, as required by Ashe v. Swenson, 397 U.S. 436, 444-445, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). State v. Magee, 517 So.2d 271 (La.App. 1st Cir.1987).
On remand, defendant was permitted to introduce a transcript of the record of the first trial into evidence; and, in its written reasons rejecting defendant’s collateral es-toppel claim, the court noted that it had reviewed the transcript of the record of defendant’s first trial and had considered the applicable legal standard pertaining to a collateral estoppel claim. Defendant now appeals (in a single assignment of error) the ruling made by the trial court in conjunction with the rehearing of the motion for new trial, in which the trial court denied defendant’s motion for new trial and thereby rejected the collateral estoppel claim.
The record of the second trial reflects that the instant offense occurred on January 2,1985, in St. Tammany Parish. At the trial, the state and the defense stipulated that defendant had been convicted of aggravated battery on May 10, 1982, and that defendant had a .22 caliber revolver (state exhibit S-2) in his possession on January 2, 1985.
Gary L. Frisard of the Covington City Police Department responded to a reported shooting at a house on 807 North Filmore Street. He observed a black man, who appeared to have been shot, sprawled on the floor. Some other persons at the scene proceeded to take the victim to the hospital. Frisard walked out of the residence to his police unit. Defendant approached Fri-sard, identified himself, and said he had shot John Gallo. Frisard then advised defendant of his Miranda rights. Defendant then further stated he had a gun, lifting his sweater to display a .22 caliber revolver (S-2) in his waistband. Defendant gave the gun to Frisard, who placed him under arrest.
At his trial for the instant offense, Barron Magee took the stand in his own defense. Additionally, he presented the testimony of Charlotte McDow[2] and John Ma-gee, his father.
Charlotte McDow testified that John Gallo had been her “fiance” for five years and *1033 that they had three children. She and Gallo had terminated their relationship about three months prior to the shooting; and she had started dating defendant on December 26, 1984. McDow testified that, on January 2, 1985, Gallo came to her home at about 3:00 or 3:30 p.m. Gallo was “agitated” and threatened her, which caused her some concern. While Gallo was there, defendant came inside her home. Defendant was not upset at the time. She did not call the police prior to the shooting because her telephone was not working properly.
John Magee testified that he was at McDow’s home at the time defendant went there. He testified that the gun, referred to herein as state exhibit S-2, had been in his possession that afternoon. He, however, relinquished possession of the gun (S-2) to defendant at defendant’s request.
Defendant testified that he went to MeDow’s home unarmed and that, after he got there, he obtained the gun from John Magee’s truck. Defendant testified that he took the gun with him into McDow’s residence because he felt his life was in danger. While he was inside McDow’s residence, Gallo threatened him. Gallo told him he would kill him if he lived at McDow’s residence. Defendant testified that Gallo walked past him to the kitchen. Defendant proceeded toward the door to leave McDow’s home. At that moment, Gallo approached defendant from behind with a steel ashtray. Defendant testified that he shot Gallo to prevent Gallo from killing him with the ashtray.
Citing Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and State v. Blache, 480 So.2d 304 (La.1985), defendant contends that the instant prosecution and trial on the charge of being a convicted felon in possession of a firearm was barred by the doctrine of collateral estoppel. Defendant essentially asserts that collateral estoppel applies in this case because he was acquitted of the manslaughter charge in his first trial, the manslaughter charge and the La.R.S. 14:95.1 charge arose out of the same incident, he relied on the defense of justification in both trials, and the jury decided the issue of justification in his favor in the manslaughter trial. Consequently, he concludes that his conviction should be reversed on the basis of collateral estoppel.
In Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the accused was first tried and acquitted for the armed robbery of one of several victims of the offense. Thereafter, he was tried a second time and convicted, this time for the armed robbery of one of the other victims. Applying the doctrine of collateral estoppel to the facts in Ashe, the United States Supreme Court concluded that, since the only rationally conceivable issue in dispute at the first trial had been the accused’s identity as a perpetrator, collateral estoppel precluded relitigation of that issue at the second trial.
In State v. Blache, 480 So.2d at 306, the Louisiana Supreme Court stated the following:
The doctrine of collateral estoppel was explained in Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970):
‘Collateral estoppel’ is an awkward phrase, but it stands for an extremely important principal in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.
The opinion makes it clear that the doctrine is anchored in the Fifth Amendment guarantee against double jeopardy. In this State, the application of the doctrine has been limited ‘to those cases where it is required by Ashe v. Swenson .... ’ State v. Knowles, 392 So.2d 651, 655 (La.1981), citing, State v. Doucet, 359 So.2d 1239, 1248 (La.1978).
In Ashe, the United States Supreme Court gave the following guidelines in applying the doctrine of collateral estop-pel:
Where a previous judgment of acquittal was based on a general verdict, as is usually the case, this approach requires *1034 the court to ‘examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.’ 397 U.S. at 444, 90 S.Ct. at 1194.
In State v. Blache, Blache was charged with possession of a firearm by a convicted felon and attempted second degree murder. Both charges arose out of a single incident, involving the following sequence of events. Three youths bicycled past the home of Blache as he sat with a friend on the porch of his father’s home. An argument ensued between the youths and Blache. The youths departed, but they returned with two recruits. A fight then began, during which one of the youths struck Blache with a blunt instrument, causing severe head trauma. With his friend under attack and Blache staggering from the blow he had received, Blache went into his father’s house and got his brother-in-law’s loaded shotgun. Within seconds, Blache emerged from the house with the gun, firing the shotgun three times at the youths as they began to run away.
Blache was first tried and acquitted on the charge of possession of a firearm by a convicted felon. Thereafter, at a second trial, Blache was tried on the charge of attempted second degree murder and found guilty of the responsive offense of aggravated battery.
In Blache, the Louisiana Supreme Court determined that the sole contested issue in Blache’s first trial was whether or not Blache (a convicted felon otherwise prohibited from possessing a firearm) was justified in taking hold of the shotgun in self-defense or defense of another (his friend) and shooting at the youths. The Supreme Court further determined that in Blache’s second trial, which was predicated on the same facts and employed the same defense, an ultimate fact which the jury was required to resolve (whether or not Blache was justified in taking up the shotgun and shooting at his attackers) had already been resolved by the first jury which found justification when it acquitted Blache. Consequently, the Supreme Court reversed Blache’s conviction and sentence for aggravated battery on the basis that collateral estoppel barred the second prosecution.
In reaching its decision on the issue of collateral estoppel, the Louisiana Supreme Court noted in Blache, that it had never previously specifically decided whether or not justification is a defense to a charge of possession of a firearm by a convicted felon. 480 So.2d at 307. In deciding that justification is a defense to such a charge, the court stated its holding as follows:
We hold that when a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. In such situation justification is a defense to the charge of felon in possession of a firearm.
480 So.2d at 308.
In the instant case, we find that the state was not collaterally estopped from prosecuting defendant on the charge of possession of a firearm by a convicted felon. In reaching a different result from that in State v. Blache, we find State v. Blache to be clearly distinguishable.
At defendant’s first trial, the evidence was strong that defendant had shot John Gallo and that Gallo had died as a result of that shooting. Defendant’s defense rested solely on his contention that the shooting had been in self-defense in accordance with La.R.S. 14:19. Thus, the sole rationally conceivable issue in dispute before the jury was whether or not the shooting was justified in self-defense; and that that issue was the only issue in dispute is made evident by defense counsel’s opening and closing statements, the state’s closing statements, the trial court’s instructions to the jury, and defendant’s statements to the police after the shooting and Charlotte McDow’s testimony, which were introduced into evidence at the first trial.
*1035 Thereafter, at defendant’s second trial on the charge of possession of a firearm by a convicted felon, the issue of whether or not defendant was justified as a convicted felon in taking possession of the gun he used to shoot John Gallo (an issue never before the jury at the first trial) was placed before the jury. In the second trial, defendant argued in his opening statement and closing statement only that the shooting had been in self-defense (La.R.S. 14:19); but the instructions which the trial court gave to the jury were only as to justification through the compulsion of threats as set forth in La.R.S. 14:18(6),[3] a justification defense not raised at the first trial.
Based upon our examination of the record of defendant’s first trial, taking into account the pleadings, evidence, charge and other relevant matter, there had not even been a hint of any issue before the first jury as to whether or not defendant was justified as a convicted felon in possessing the gun he used to shoot Gallo. In that context, the first jury obviously did not resolve the issue of justification in regard to the charge of possession of a firearm by a convicted felon. Hence, under the guidelines set forth in Ashe for applying the doctrine of collateral estoppel, it cannot be assumed that, by acquitting defendant on the manslaughter charge, the jury found justification existed with respect to the instant charge of possession of a firearm by a convicted felon. Moreover, the evidence introduced at the first (and second) trial revealed that defendant’s possession of the gun he used to shoot Gallo included both pre-incident and post-incident possession; and, as a consequence of the pre-incident and/or post-incident possession, defendant’s possession of the gun would not have been justifiable, since the possession was for a period “longer than [was] necessary or apparently necessary to use [the gun] in self-defense, or in defense of others.” See State v. Blache, 480 So.2d at 308. See also State v. Grant, 414 So.2d 373 (La.1982), State v. Clement, 368 So.2d 1037 (La.1979).
In Blache, a determination of the issue of justification in Blache’s first trial for possession of a firearm by a convicted felon presented an entirely different situation from that involved in this case. According to the Blache Court, under the particular circumstances present in Blache, the first jury’s acquittal of Blache on the charge of possession of a firearm by a convicted felon necessarily included a finding by the jury that the shooting of the youths had been justifiable in self-defense or the defense of others. Thus, the Blache Court concluded that by finding Blache not guilty of possession of a firearm by a convicted felon, the jury was in effect finding that justification existed which exonerated Blache for his actions forming the basis of the charge of attempted second degree murder or any of its lesser included offenses.
Because the issue of whether or not defendant was justified as a convicted felon in possessing the gun he used to shoot John Gallo had not been resolved by the first jury which acquitted defendant of manslaughtér (it was decided only that defendant was justified in shooting John Gallo), the state was not collaterally es-topped from prosecuting defendant for possession of a firearm by a convicted felon; and it is the absence of any resolution of that issue by the first jury which ultimately distinguishes this case from the Blache case. Thus, unlike the first trial in Blache, the first trial in this case did not resolve the issue of justification in defendant’s second trial. Accordingly, defendant’s assignment of error lacks merit; and for the reasons assigned herein, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. In brief, defendant does not question that the issue of collateral estoppel is properly before this Court on appeal. However, in his brief, defendant asserts that arguably the proper vehicle to raise the issue of collateral estoppel was a motion for post verdict judgment of acquittal; and defendant claims that the trial court erred in denying his motion for post verdict judgment of acquittal, insofar as the state was prohibited by collateral estoppel from trying him a second time.
Contrary to defendant’s assertion, a motion for post verdict judgment of acquittal is the proper vehicle for raising the issue of sufficiency of the evidence rather than collateral estoppel. See La.C.Cr.P. art. 821.
Herein, the claim of collateral estoppel was entertained by the trial court at a hearing pertaining to defendant's motion for a new trial and motion for post verdict judgment of acquittal. At the conclusion of the hearing, the court denied both motions.
In any event, the instant record reflects that the ground set forth in defendant’s motion for post verdict judgment of acquittal was properly limited to defendant’s allegation that the evidence introduced at defendant’s second trial was insufficient; and, as previously noted in this opinion, this Court has taken the position that the issue of collateral estoppel had been raised through defendant's motion for new trial. Thus, the appeal (based solely on defendant's collateral estoppel claim) in no way relates to the motion for post verdict judgment of acquittal.

. We note that Charlotte’s surname is spelled "McDow" in the transcript of the trial of the instant offense and that the transcript of the first trial uses the spelling “McDowell.”

. The record of the second trial reflects that, before the court orally charged the jury, the state and the defense were given a copy of the court's written instructions and neither the state nor the defense objected to the instructions.